**In the Interest of W.D.L., a Minor, Plaintiff.**

**Forestal LAWTON, Juvenile Officer, Respondent,**

v.

**J.L., Appellant.**

**No. WD 44845.**

Missouri Court of Appeals, Western District.

March 17, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1992.

Application to Transfer Denied June 2, 1992.

David V. Clark, Kansas City, for appellant.

Lori L. Stipp, Kansas City, for respondent.

Donald E. Howell, Kansas City, guardian ad litem.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Appellant appeals the order of the trial court terminating his parental rights to W.D.L.

W.D.L. was born December 9, 1988. He has experienced numerous illnesses since his birth. He was taken into juvenile custody soon after birth because of allegations by the juvenile authorities that he was without proper care, custody, and support.

Soon after his birth his mother left him with his paternal grandmother. Shortly thereafter, the grandmother turned the child over to the Division of Family Services (DFS). Due to the child's recurring

illnesses she felt she was unable to properly care for him. Despite the fact that the grandmother released the child to the custody of DFS, she continually attempted to obtain permanent custody of the child. However, after reviewing the situation, DFS determined she would not be a proper permanent guardian and found the child should remain in the custody of his foster parents. W.D.L. has now been in foster care since August of 1989.

On March 20, 1989, both J.L., the natural father, and M.H., the natural mother, appeared for a pre-trial hearing which was continued to April 10, 1989. It was determined that both parents were drug abusers and had underlying mental problems.

Since M.H. has not appealed the termination order our opinion will focus on J.L. and his inability to parent W.D.L.

Throughout 1989 the DFS worked with J.L. He often failed to keep appointments for parenting assessment with DFS, and frequently moved his residence. Regular examinations of W.D.L. indicated he was in good health and properly developing.

J.L. made numerous appointments with DFS in an effort to regain custody of D.W.L. He repeatedly failed to keep these appointments. He also missed parent-child visits. During this period of DFS's involvement, J.L. held several different jobs for short durations, was treated in several mental institutions, and was placed on two-year probation. On December 6, 1989, J.L. contacted DFS and told them he would not make a good father and to put W.D.L. up for adoption. Then on December 14, 1989, he wrote DFS stating that he wanted his mother to have custody of W.D.L. In late December or early January, he moved to Oklahoma. In January of 1990, J.L. entered a six-month alcohol treatment program. At the same time he lost his job.

During April and May of 1990, J.L. was in a drug and alcohol program at Griffin Memorial Hospital in Norman, Oklahoma. He checked himself out and provided no evidence that he had completed the program. He entered another program and worked two weeks at Marriott Motor Lodge. From there he became involved in more drug rehabilitation and began employment with a carnival. During this extended period J.L. made no financial contribution to W.D.L.

In addition to his inability to maintain steady employment and his abuse of drugs and alcohol, he also has been diagnosed as having an adjustment disorder and mixed personality disorder with antisocial traits.

On November 27, 1990, defendant pled guilty to possession of marijuana and was placed on a three-year probation. J.L. entered into several social service plans with DFS and failed to comply with them. There was clear, cogent and convincing evidence that he did not comply with the terms of the plans.

The plans set forth by DFS were implemented in order that W.D.L. be returned to his father. These plans required J.L. to visit W.D.L. at certain times on certain dates. He repeatedly failed to comply with this condition. J.L. was to undergo substance abuse evaluation and was placed in drug abuse programs on several occasions. Again though, there was no evidence he successfully completed any of these programs. He failed to maintain a place of residence for at least six months as required. While he stated he had obtained a permanent residence, DFS could not locate him there. The evidence indicated J.L. failed to remain drug free. Additionally, he did not visit W.D.L. on a weekly basis as the plan required. J.L. also failed to keep DFS appraised of his whereabouts.

On appeal, appellant alleges four points of trial court error. First, he contends there was insufficient evidence to support the statutory requirements for termination pursuant to § 211.447.2(3), RSMo (Supp. 1991). Secondly, J.L. submits there was no evidence to support the contention he was not providing financial support for the child pursuant to § 211.447.2(2), RSMo (Supp. 1991). Third, he contends there was insufficient evidence to support termination based upon § 211.447.2(1), RSMo (Supp. 1991). And finally, he contends the trial court erred in refusing to grant his motion for judgement at the end of the juvenile officer's case. He submits the juvenile of-

ficer did not satisfy his burden of proof because he failed to provide evidence to support a finding of termination.

■ With regard to J.L.'s first allegation of error, § 211.447.2, RSMo (Supp.1991), grants the juvenile court authority to terminate parental rights when it finds one or more grounds present as enumerated in § 211.447, RSMo (Supp.1991). Section 211.447.2(3), RSMo (Supp.1991), is one of those grounds. This section provides that termination is appropriate where the child has been under the jurisdiction of the juvenile court for at least one year, the conditions which led to the assumption of jurisdiction persist, or potentially harmful conditions exist. Additionally, there must be little likelihood of remedying those conditions such that the child can be returned to the parent in a reasonable amount of time and continuing the parent-child relationship hinders the child's opportunity for a permanent home.

Appellant complains that the evidence presented under § 211.447.2(3), RSMo (Supp.1991), was based on inadmissible hearsay. He specifically objects to the evidence by Steve Gibson, DFS employees and the medical records of Western Missouri Mental Hospital.

The above referred to evidence came in throughout the proceedings without objection.

In *M.E. v. M.E.E.*, 715 S.W.2d 572, 574 (Mo.App.1986), cited by respondent the court stated:

> We first note that it is nearly impossible to predicate reversal on the erroneous admission of evidence in a court-tried case. The party seeking reversal must convince the appellate court that the trial court's decree had insufficient competent evidence supporting it. The decree will be sustained unless no substantial evidence supports it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. The trial court has the opportunity to judge the credibility of the witnesses and to weigh the evidence. We will defer to the trial judge's ability to appropriately consider only that evidence which is rele-

vant and admissible, absent a manifest abuse of discretion.

■ The admission of improper evidence is not ordinarily a ground for reversal in a non-jury case, at least where it did not appear to have played a critical role in the court's decision. *Smead v. Allen*, 581 S.W.2d 93, 94 (Mo.App.1979). Throughout the proceeding evidence was adduced regarding the instability of the appellant's living situation. This evidence dated back to 1989 and continued up to the time of trial. J.L. testified regarding his many hospital stays and the variety of drug treatment programs he had been involved in. In December 1989, appellant moved to Oklahoma to live with his mother. He did not return to Kansas City until August of 1990. During this period he made very little effort towards visiting his son. A social worker testified that even when he returned, he was very difficult to contact. J.L. additionally failed to demonstrate that he had a permanent home for him and his son. There was an abundance of testimony, from appellant and other witnesses he put on, regarding his substance abuse problems. At no time during the proceeding did the appellant present evidence that he had successfully completed a program. Evidence of minimal compliance with DFS service plan was also submitted. There was overwhelming evidence to support the finding that appellant's cooperation with the DFS was marginal. There is sufficient non-hearsay evidence to support the finding that the conditions which existed at the time W.D.L. was put into foster care still exist. Additionally, appellant has provided no evidence that the conditions are going to change any time soon. In fact, appellant's brief indicates he is not seeking custody of his son at this time. Because of his transient life style it was almost impossible for the appellant to comply with DFS requirements. In December, 1989, he entered into an agreement with Steve Gibson, DFS worker. He agreed to attend counseling sessions, parenting classes, and visitation. After making this agreement with DFS appellant left town and made no effort to comply with the terms of the agreement.

Appellant returned to Kansas City in August, 1990. Upon his return he was again offered a written service agreement, but he preferred to attend parenting classes at Western Missouri Mental Center. DFS received no information that he participated in these classes. Yet in February, 1991, he did attend the classes. This happened to coincide with the time the termination of parental rights was set for trial.

Visitation with W.D.L. did not become regular until January, 1991. Appellant's compliance with DFS service agreement was insufficient. Appellant failed to demonstrate that he could properly care for D.W.L.

The evidence was overwhelmingly clear, cogent and convincing that appellant had failed to comply with requirement of § 211.447.2, RSMo (Supp.1991), as set forth to him by DFS.

■ Appellant's Point II alleges insufficient evidence was presented to establish appellant's failure to supply adequate "food, clothing, and shelter" pursuant to § 211.447.2(2)(d), RSMo (Supp.1991).

The trial court found clear, cogent and convincing evidence that W.D.L. was abused and neglected and that J.L. had continually failed to provide adequate food, clothes, shelter, for W.D.L., although physically able to do so.

The evidence established that J.L. held a variety of jobs throughout the course of this matter. During this period J.L. made no effort to contribute to the support of W.D.L.

Appellant claims he did not neglect W.D.L. Section 210.110, RSMo 1986, defines neglect as "the failure to provide, by those responsible for the care, custody and control of the child, the proper or necessary support, education, as required by law...."

The long absences of the father from W.D.L.'s life, together with his inability to provide support or proper housing, and the abundant evidence of drug abuse, is sufficient evidence for the trial court to find that W.D.L. was neglected.

The evidence at the hearing was that J.L. was a transient with no stable housing. The evidence further showed he had not contributed to the support of W.D.L., had virtually no contact with W.D.L. and lacked parenting skills.

Even though J.L. was a part time itinerant employee he had an obligation to send support. By even making minimal payments he could demonstrate a desire and intent to continue the parent-child relationship. *In re the Interest of M.L.K.*, 804 S.W.2d 398, 402 (Mo.App.1991). This he did not do. Appellant's Point II is denied.

■ For his third point, appellant claims there was insufficient evidence to establish he left W.D.L. as an infant without providing for his care. § 211.447.2(1)(b), RSMo (Supp.1991).

The trial court found J.L. abandoned W.D.L. for a period of six months or longer, without good cause. He made no provision for his parental support and made no arrangements to visit W.D.L. Additionally, J.L. only visited W.D.L. on one occasion between January 26, 1989, and October 12, 1990. During this time he sent no cards, letters or gifts and provided no child support.

DFS employee Johnson testified she was assigned the case on May 11, 1990. Her first contact with appellant was by phone in June, 1990. She scheduled a meeting for June 22, 1990, and he failed to attend. She saw him for a first time on August 23, 1990. According to DFS workers appellant did not visit W.D.L. until October 12, 1990, at the juvenile court. She did not see him again while she had the case. There is sufficient clear, cogent and convincing evidence that appellant had abandoned W.D.L.

In the case *In the Interest of Gowen*, 610 S.W.2d 319 (Mo.App.1980), the court considered one intervening visit as a token visit and not sufficient to prevent § 211.-447(2)(1), (6), RSMo 1986, from being implemented. The court may regard such superficial contacts as token efforts and terminate parental rights despite their existence. *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 170 (Mo. App.1989). Appellant's Point III is denied.

Finally, in Point IV appellant claims the trial court erred because the juvenile officer did not present sufficient evidence to support any ground for terminations of appellant's rights.

For a court to terminate parental rights there must be "clear, cogent and convincing" evidence of one or more of the statutory conditions. Section 211.447.2(2), RSMo (Supp.1991). There must be strict and literal compliance with the statutes and those who seek to terminate parental rights have "the full burden of proof." *S.K.L. v. Smith,* 480 S.W.2d 119, 123 (Mo. App.1972).

Further extensive comments on appellant's Point IV would entail reviewing again the evidence presented to the court as more fully set forth above.

There was clear, cogent and convincing evidence that appellant abandoned W.D.L. and commenced regular visitation shortly before the termination of parental rights case went to trial. His transient wanderings have been fully set forth herein.

Appellant failed to provide support for W.D.L. Clear, cogent and convincing evidence established appellant held several different jobs during this period of time and made no contributions for the support of W.D.L.

Finally, appellant failed to rectify his deficiencies under the DFS's plan. The judgment of the trial court is affirmed.

All concur.