**In the Interest of H.P., Jr., a minor.**

**In the Interest of J.S., a minor.**

**In the Interest of D.S., a minor.**

**In the Interest of R.P., a minor.**

**Nos. 59350 to 59353.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 17, 1991.

Richard Mark Goldstein, Cape Girardeau, for appellant.

Benjamin Frederick Lewis, Cape Girardeau, for respondent.

CRANE, Judge.

The mother of five children appeals from orders terminating her parental rights to four of those children under § 211.447 RSMo 1986.[1] The four children are her sons, H.P., Jr., R.P., J.S. and D.S. We affirm.

The court assumed custody of these children on March 28, 1986, and they were placed in the legal and physical custody of the Division of Family Services [DFS] on May 9, 1986. The conditions which led to this placement were lack of supervision, verbal abuse of all four children and physical abuse of H.P., Jr., neglect of the children's education, lack of attention to the children's hygiene, and failure to properly feed the children.

---

1. This action was brought under the 1986 statute. Unless otherwise noted, all further references to this statute in this opinion refer to the 1986 version of the statute.

This action arose in November, 1989, upon petitions to terminate parental rights to the four children, H.P., Jr., R.P., J.S. and D.S. With respect to mother, the petitions alleged: 1) that a mental condition rendered mother unable to knowingly provide the children with the necessary care, custody, and control, 2) the children had been under the jurisdiction of the juvenile court for one year and the conditions which led to the assumption of jurisdiction still persisted, and 3) mother had failed to provide the children with adequate food, clothing, shelter, medical care, and other care and control although physically and financially able to do so.

On October 12, 1990, at a consolidated hearing on the petitions, the court heard evidence from mother's treating psychiatrist, the DFS caseworker, and mother.[2] On November 7, 1990, the trial court entered findings of fact, conclusions of law and an order terminating mother's parental rights to each of the four children. She appeals from those orders.

█ In reviewing an order terminating parental rights, the decision of the trial court will be sustained unless there is no substantial evidence to support it, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *In the Interest of J.H.D.,* 748 S.W.2d 842, 843 (Mo.App.1988).

Mother's sole point is that the evidence was insufficient to support any statutory ground for termination or to establish that termination was in the best interests of the children. Under § 211.447 RSMo, a court may not terminate parental rights unless termination is in the best interests of the child and it appears by clear, cogent and convincing evidence that one or more of the statutory grounds for termination exists. *R.L.P. v. R.M.W.,* 775 S.W.2d 167, 169 (Mo. App.1989).

█ The trial court found clear, cogent and convincing evidence in support of the three grounds alleged in the petition for termination. We may affirm if the evidence supports any one of the statutory grounds alleged. *R.L.P.,* 775 S.W.2d at 170; *M.L.S. v. C.S.,* 710 S.W.2d 452, 454 (Mo.App.1986). We find substantial evidence to support termination on the statutory ground set out in § 211.447.2(3), that the children had been under the jurisdiction of the court for more than one year and that the conditions which led to the assumption of jurisdiction still persisted.[3] We also find substantial evidence to support the finding that termination was in the best interests of each child.

As required by statute, in making its determination under § 211.447.2(3), the court considered and made findings on the four factors set out thereunder. Each of these factors is a condition or act which may have a negative impact on the child, and, if found to exist, would support termination under this subdivision. *See, In Interest of L.G.,* 764 S.W.2d 89, 94 (Mo. banc 1989). With respect to these statutory factors, the court found mother failed to successfully complete any of the four social service plans she entered into with DFS, that the diligent and protracted efforts of DFS and the deputy juvenile officer to aid mother in providing a proper home had failed, and that mother had a permanent mental condition which rendered the parent unable to knowingly provide the necessary care, custody and control of the children. It also found that mother was not subject to a chemical dependency.

---

2. The natural father of H.P., Jr. and R.P. was deceased. The father of J.S. and D.S. consented to termination of parental rights.

3. The trial court found that parental rights should also have been terminated under § 211.447.2(2)(a) (mental condition) and § 211.447.2(2)(d) (failure to provide adequate food, clothing, shelter, etc.) Prior to 1985, these were independent statutory grounds for termination. § 211.447(2)(g) and (b) RSMo 1978. However, after 1985, these became conditions and acts for the court to consider when determining whether to terminate parental rights where the child has been adjudicated to have been abused or neglected. § 211.447.2(2); *In Interest of L.G.,* 764 S.W.2d 89, 94 (Mo. banc 1989). The petitions in this case did not allege any prior adjudication of abuse or neglect, nor did the court make any finding that there had been a prior adjudication of abuse or neglect. *See id.* at 93. Termination could not be properly ordered under § 211.447.2(2) without such a finding.

There was substantial credible evidence before the trial court to support the finding that mother failed to successfully complete any of the social service agreements. To assist mother in becoming a responsible parent, DFS entered into four social service agreements with her. These agreements set forth mother's desire to regain custody of the four children, the steps she agreed to take to work toward that goal and the services DFS would provide to help her achieve that goal. The first agreement, dated May, 1986, required in part that mother visit the children, who were in foster care, and find and maintain a suitable home for the whole family. She did not comply with either requirement. Mother moved to Chicago and only visited the children two times prior to April, 1987.

Mother moved back to the Cape area in February, 1988 and entered into a second social service agreement with DFS. This agreement required mother to maintain a stable home environment, visit the children, who continued in foster care, once weekly, cooperate with DFS and work with a home management counselor. Mother breached this agreement by not cooperating with DFS. She became hostile and defensive when the caseworker tried to talk to her about her children and would not accept any suggestions made by the caseworker. At this time she lived in a trailer sufficient for herself and her one year old daughter. The children were brought to her trailer to visit, but she would make no plans for food or activities at these visits, although a home management counselor tried to assist her in making these plans.

After mother was given physical custody of the two older boys in August, 1988, she entered into a third social service agreement with DFS. This agreement required, in part, that she participate in parent education classes, work with the home management counselor, provide adequate food, shelter, clothing and supervision for the children, and ensure that they bathe daily. Mother did not comply with the parent education classes, did not cooperate with the home management counselor in planning nutritious meals or budgeting food stamps, and did not provide food or adequate supervision. Both boys were destructive and prone to fighting while living with mother. There was continuous screaming and name-calling between mother and the boys. She would do something to them and they would retaliate. The police were occasionally called. Mother could not control the boys' behavior and could not get them to bathe or change their clothes. They did not attend school regularly. Finally she asked that the older boys be put back into foster care. The boys were returned to foster care in February, 1988, and mother thereafter moved to Chicago.

Before she returned to Chicago, mother entered into a fourth service agreement dated February 17, 1989, which gave mother six months to obtain and maintain a safe and adequate living environment, to contact and follow through with a psychiatrist, to write the children weekly, and to cooperate with social agencies. Mother did not obtain a safe, adequate living environment for the children, did not contact a psychiatrist, and did not cooperate with DFS' request for her address for four months. This agreement contained a warning that failure to comply may result in the termination of her parental rights.

Mother returned to the Cape area in August, 1989, rented an apartment and began monthly visits with her sons. After verbally criticizing and abusing the two older boys on the first visit, she was told there would be no further visits unless her behavior changed. The case worker testified that subsequent visits were less confrontational, but not productive, with no display of affection. Mother then stopped attending the scheduled visits and moved away from the Cape area in April, 1990. She visited the children only one more time, in June, 1990, before the hearing.

There was also substantial credible evidence that the numerous services provided to mother by DFS and the deputy juvenile officer had failed. DFS provided parent education classes in the home and a home management counselor in the home to help with budgeting, child care, and activity planning. It provided transportation for

the children to visit and arranged the visits. It provided weekly counselling sessions for mother while she was in Cape Girardeau. In addition the children's caseworker, the deputy juvenile officer, and a practicum student made numerous home visits to alleviate some of the problems. None of these services was successful.

The court also considered mother's mental condition. Mother's treating psychiatrist testified that she suffered from a chronic mental condition, schizotypal personality disorder. While he testified that caring for her children would be very difficult for her without treatment, he also testified that he observed nothing that would make her unable to care for her children. This testimony alone is inadequate to support the court's finding that mother's mental condition would render her unable to care for her children. The court may have rejected the psychiatrist's testimony based on other evidence in the record of mother's inability to care for the children. In any case, this finding was not required to support the termination order. The absence of a mental condition rendering mother unable to care for her children does not preclude termination where other factors support termination. *In Interest of L.G.,* 764 S.W.2d at 94.

The substantial evidence of mother's continued failure to provide food and shelter and to control the children and of mother's continued verbal and physical abuse, as well as the evidence of her failure to comply with the terms of the social service agreements and the evidence that the social services provided to mother had failed, clearly supports the trial court's determination that the conditions which led to the assumption of jurisdiction persisted after the children had been under the jurisdiction of the trial court for more than one year. Evidence that mother adequately cared for her young daughter, who was born after the court took custody of her sons, does not bear on the issue of whether mother could provide the necessary care and control of her four older sons. There was substantial evidence to support a finding that the grounds for termination set out in § 211.447.2(3) existed.

After determining that one or more of the statutory grounds of termination exists, a trial court must then determine if termination is in the best interest of the children. § 211.447.2; *R.L.P.,* 775 S.W.2d at 171. The trial court evaluated and made findings on the seven factors listed under § 211.447.3 that it was required to consider. These factors likewise constitute conditions or acts which may have a negative impact on the child and, if found to exist, would support a finding that termination is in the best interests of the child. The court found the children's emotional ties to the mother, if any, were limited; that visitation was sporadic and inconsequential; that additional services would not bring about a lasting parental adjustment enabling return of the children to the parent within an ascertainable time; and that there was a lack of a real commitment to be a parent to the children.

The trial court's finding that termination would be in the children's best interest is supported by substantial credible evidence. The evidence showed the children to have limited emotional ties to their mother. At the time of the hearing the children had been in foster care for four and a half years. H.P., Jr. never indicated to his caseworker that he missed his mother, and spoke of wanting to be adopted. R.P. did not want to go back to live with his mother. Neither H.P., Jr. nor R.P. wrote to their mother although the caseworker told them they could. When they were placed in foster care, J.S. was three years old and D.S. was eight months old. The younger boys did not ask the caseworker about their mother, although they knew who she was. The caseworker testified there was not much of a bond between any of the children and their mother. Evidence supporting the other findings has already been set out in this opinion. Additionally, the DFS caseworker offered opinion evidence that mother was unable to properly care for the children, that reunification of these children with their mother was not a viable goal and that the children were adoptable. From all of this evidence, the trial court's conclusion that the termination was in the

best interests of the children was not clearly erroneous. *In Interest of C.M.M.*, 757 S.W.2d 601, 607 (Mo.App.1988).

The order of termination is affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.