In the Interest of J.A.A.

In the Interest of E.L.J.

In the Interest of R.L.J.

Nos. 59867, 59868 and 59871.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 28, 1992.

Linda A. Diehl, Clayton, for appellant.

Corrine Richardson, Clayton, for respondent.

John R. Bird, St. Louis, Guardian Ad Litem.

PUDLOWSKI, Presiding Judge.

This appeal has been taken by the natural mother of three children who were the subjects of a termination of parental rights proceeding in the Juvenile Division of the

1. All statutory references are to RSMo 1986.

Twenty–First Judicial Circuit in St. Louis County. At the conclusion of this proceeding mother's parental rights over each of her children were terminated pursuant to § 211.447.[1] On appeal mother claims the trial court erred in finding that: (1) the statutory grounds for terminating mother's parental rights were met because the terms of the service plan were not reasonable and the evidence did not support the court's decision; (2) the statutory grounds for terminating mother's parental rights were met because the division of family services did not make reasonable, continuing and diligent efforts to aid mother in adjusting her circumstances; (3) the statutory grounds for terminating mother's parental rights were met because mother did not abandon her children; and (4) terminating mother's parental rights is in the best interest of the children. We affirm.

A.L.A. is the natural mother of three minor children; R.L.J., born November 24, 1983; E.L.J., born February 8, 1985; and J.A.A., born May 18, 1986. She first formally came to the attention of the juvenile court on December 3, 1983, when the court assumed jurisdiction over R.L.J. On February 9, 1984, R.L.J. was returned to the custody of his mother, however, this was just the beginning of mother's association with the juvenile court.

On one of these occasions a petition was filed alleging that on January 26, 1988, mother left the children at home without adult supervision. The petition alleged that the family's residence was "very cold and the children were clad only in dirty underwear. The baby [J.A.A.], was in a soiled diaper and no clean diapers were available. There were piles of trash and garbage scattered on the kitchen floor." The children were placed in emergency foster care and, after mother denied the charges, the cases proceeded to trial.

On April 6, 1988, the juvenile court commissioner found the allegations to be true and assumed jurisdiction over all three children. The children were placed in the legal and physical custody of the Missouri Division of Family Services [DFS] for foster

care placement. The judge of the juvenile division adopted the adjudicatory and dispositional aspects of this order on April 22, 1988. DFS formulated a service plan to assist mother in obtaining physical custody of her children and this plan was approved by the court. Mother failed to comply with the requirements of the service plan and on October 1, 1990, termination of parental rights petitions were filed with regard to each of the children.

On January 14, 1991, trial was commenced on the consolidated petitions. Ms. Sharon Riney, the DFS social service worker assigned to mother and her three children, testified that mother had failed to comply with several aspects of the service plan while DFS had met its requirements under the plan. As to the children, Riney testified that they had progressed well in the time that they spent in foster care placement and it was the goal of DFS to place all three children in the same home. Riney felt there was nothing in the children's background or emotional makeup which stood as an impediment to them being adopted but that the longer they remained in foster care the more difficult it would be to find an adoptive home for them.

The judge of the juvenile court sustained each of the petitions on the grounds set forth in § 211.447.2(3)(a) and (b) and § 211.-447.2(1)(b). Specifically, the judge found the children had little emotional ties to mother, mother failed to maintain regular visits with the children, mother failed to contribute to the costs of care and maintenance for the minor children and mother is disinterested and lacks commitment to the children. The court found that additional services were not likely to result in parental adjustments and, therefore, it was in the best interest and welfare of the children that mother's parental rights be terminated. This appeal followed. Additional facts will be developed as necessary.

■ In reviewing an order terminating parental rights, the decision of the trial court will be sustained unless there is no substantial evidence to support it, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *In Interest of H.P.*, 815 S.W.2d 143, 144 (Mo.App.1991).

Mother's first point on appeal is that the trial court erred in finding that the statutory grounds for terminating mother's parental rights pursuant to § 211.447.2(3)(a) and (b) were met because the terms of the service plan were not reasonable and the evidence did not support the court's decree. § 211.447.2 states that a court may not terminate parental rights unless the termination is in the best interests of the child and it appears by clear, cogent and convincing evidence that one or more of the statutory grounds exists. The court found that the statutory grounds did exist under § 211.447.2(3) in that the children had been under the jurisdiction of the juvenile court for over one year and a continuation of the parent/child relationship greatly diminished the children's prospects for early integration into a stable and permanent home.

§ 211.447.2(3) also requires the court to make findings on the four factors set out thereunder. The court found that under subsection (a) mother had freely, voluntarily and knowingly entered into a service plan with DFS and mother had made little progress in complying with the terms of the plan. The court ruled that DFS had made reasonable efforts to fulfill its responsibilities under the plan. The court found that under subsection (b) mother had failed on a continuing basis to adjust her circumstances or conduct to provide a proper home for the children despite reasonable, continuing and diligent efforts by DFS to aid her in doing so. Finally, the court found that the grounds for termination under subsections (c) and (d) did not exist.

■ Any one of the four factors under § 211.447.2(3) is a condition or act which may have a negative impact on the children, and, if found to exist, would support termination under this subdivision. *In Interest of H.P.*, 815 S.W.2d at 144. Mother argues that failure to comply with a social service plan, standing alone, is insufficient evidence to support termination of mother's rights over her children when there

has been no finding that the plan was reasonable. However, there is no requirement that the court make findings as to the reasonableness of a service plan under § 211.447.2(3) and there is no particular standard of services or treatment required. *In re Interest of A.L.B.*, 743 S.W.2d 875, 881 (Mo.App.1987). Here, the court looked at the terms of the service plan and found that mother had made little progress in complying with those terms. This is all that was required under § 211.447.2(3) and, standing alone, was enough to support the court's termination of mother's parental rights.

■ Moreover, the terms of the service plan do not appear to be unreasonable. Under the plan mother was required to maintain regular contact with her children by visiting them at least twice a month; obtain suitable housing for herself and the children; to be employed, seek employment or be enrolled in a job training program approved by DFS; to meet with her social worker once a month; to undergo a psychological and psychiatric evaluation and attend any recommended therapy or counseling; to submit a written daycare/babysitting plan; to notify the social worker of changes in her status within two days; and to obtain drug/alcohol counseling at a place approved by the social worker. The plan required DFS to arrange visits between mother and the children upon proper request of mother; to inspect mother's home on request for compliance with the set conditions; to refer mother upon request to resources for psychological and psychiatric evaluation and counselling and for drug/alcohol counselling; to inform mother as soon as possible of significant events in the children's lives; to meet with mother once a month if mother made herself available; and to keep mother informed of changes in the status of the social worker or supervisor assigned to the case.

The evidence at trial showed that mother failed to meet almost all of her responsibilities under the plan including such simple requirements as visiting her children twice a month, submitting a daycare proposal for the children and searching for work. In addition, mother failed to contact her social worker for assistance in meeting her requirements under the plan. Thus, it is difficult to understand, given mother's limited effort, how mother can argue the service plan was too unreasonable for her to meet her responsibilities. In any event there is sufficient evidence to support the court's finding under § 211.447.2(3)(a) and (b).

■ Mother next argues that the trial court erred in terminating her parental rights pursuant to § 211.447.2(3)(a) and (b) because DFS did not make reasonable, continuing and diligent efforts to aid mother in adjusting her circumstance so as to regain custody of the children. Again mother has misstated the law under this section. As we stated earlier this statute does not require any particular standard of treatment or services and even the absence of treatment or services is no defense to a termination proceeding. *In re Interest of A.L.B.*, 743 S.W.2d at 881. Nevertheless, the court found that DFS made reasonable efforts to fulfill its responsibilities under the plan and there is sufficient evidence to support this finding. Point denied.

■ On her third point of appeal mother claims the trial court erred in finding the statutory grounds for terminating her parental rights pursuant to § 211.447.2(1)(b) were met because mother did not abandon her children. Under § 211.447.2(1)(b) it must be shown that for a period of six months or longer the parent, without good cause "left the child without any provision for parental support" and "without making any arrangements to visit or communicate with the child, although able to do so."

Here, mother had only one one-hour visit with her children within the six month period immediately prior to the filing of the termination petitions. In addition, from March 22, 1988, to June 14, 1990, mother only managed to attend seven one-hour visits with her children while from October 13, 1988 to March 17, 1990 mother failed to keep nineteen scheduled visits with her children. She explained those failures by stating she forgot the visits, had overslept

or was ill. No other communication of any sort occurred between mother and her children. Thus, it is evident that mother has made at best, a "mere token" effort to visit with her children especially in light of the weak unpardonable explanations. It was within the court's discretion to overlook this one visit in finding there has been an abandonment. *See In Interest of R.E.C.,* 716 S.W.2d 879, 884-85 (Mo.App.1986). Coupled with this conduct mother failed as per § 211.447.2(1)(b) to provide financial support to the children during the six month period immediately prior to the filing of the termination petitions. In fact, mother provided no support to the children the entire time they were under the jurisdiction of the juvenile court and in the custody of DFS. This was despite the fact that there was evidence mother had been employed periodically during this time. We believe there was sufficient evidence to support the trial court's finding that an abandonment had occurred as stipulated in the statute.

■ Mother's final point is that the trial court erred in finding that terminating mother's parental rights pursuant to § 211.447.2 is in the best interest of the children. The record, contrary to mother's assertion, indicates that terminating mother's parental rights pursuant to § 211.447.2 is in the best interest of the children.

Mother and her children have had a long period of involvement with the juvenile court and DFS. The children, in fact, have spent the better portions of their lives in temporary foster care. As aforementioned mother failed in her efforts to convert her conduct in order to regain custody of her children in the past and nothing on the record indicates mother will be able to remedy her parenting deficiencies in the future. Significantly, the evidence revealed the children had little emotional ties to the mother.

Encouragingly the evidence suggests that the three children are adoptable and that there are adoptable homes available for them. However, the longer the children remain in temporary foster care the more difficult it will be to place them in an adoptive home. This evidence is sufficient to support the trial court's ruling that it was in the best interest of the children to terminate mother's parental rights. Point denied.

The judgment is therefore affirmed.

STEPHAN and CRIST, JJ., concur.