**In re the Matter of C.L.A.**

**Mildred LUNSFORD, Juvenile Officer, Petitioner–Respondent,**

v.

**CHARLES L.A., Respondent–Appellant.**

No. 19521.

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 1995.

---

Ralph R. Bloodworth, Jr., Bloodworth Law Offices, Poplar Bluff, for appellant.

Mary L. Dilks, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for respondent.

FLANIGAN, Judge.

On November 16, 1992, pursuant to § 211.442 to § 211.487,[1] the juvenile officer of Butler County instituted this proceeding to terminate the parental rights of Charles L.A. to his daughter C.L.A., born February 19, 1980. In 1986, Charles and the child's mother were divorced, and the mother was awarded custody of the child. On February 2, 1989, the mother was killed in an automo-

bile accident. After the funeral of the mother, with whom the child had been living in Arkansas, the child's half-sister took her to Oklahoma, without the consent of Charles. The child lived with other family members in Oklahoma, and later in Missouri, until January 10, 1990, when the Juvenile Division of the Circuit Court of Butler County placed her in the custody of Missouri Division of Family Services.

On February 21, 1990, after a hearing attended by the interested parties, including Charles and his attorney, Charles admitted the allegations of the petition which had been filed on January 10, 1990. Those allegations included: Charles resides in Ravenden, Arkansas; the child is in the custody of an uncle in Missouri; Charles "has sexual abuse charges on him in the state of Arkansas"; the child has been living in Wayne County with the mother's girl friend until the child's uncle went to get her; the uncle no longer is interested in getting custody of the child and Charles is on his way to pick up the child; the child resides or was found in Butler County; the child is in need of protective custody of the court.

On February 21, 1990, the court sustained the petition, found the child to be neglected, and made her a ward of the court "to continue in foster care."

On November 16, 1992, the juvenile officer filed the petition to terminate the parental rights of Charles. Charles filed an answer and "Cross-petition," in which he sought custody of the child. On March 17, 1993, an evidentiary hearing was held in the termination proceeding. Present at that hearing were the child, the child's guardian ad litem who is an attorney, the juvenile officer, the attorney for the juvenile officer, Charles, and Charles's attorney. On February 15, 1994, the court entered a judgment terminating the parental rights of Charles. The judgment denied the relief requested by Charles's cross-petition. Charles appeals.

Charles contends that the evidence was insufficient to support the order of termination, in that "there was insufficient evidence to show that the child had been aban-

1. All references to statutes are to RSMo 1994, V.A.M.S.

doned or neglected by Charles" and "there was no evidence of any psychological disorder or mental disorder that would prohibit Charles from having custody of the child."

■ The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer if it finds that termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that one or more of the three grounds for termination, enumerated in § 211.447.2(1–3), exists. § 211.447.2. Those three grounds have been termed "abandonment," § 211.447.2(1), "neglect," § 211.447.2(2), and "failure to rectify," § 211.447.2(3). *In Interest of D____ L____ C____*, 834 S.W.2d 760, 764 (Mo. App.1992).

■ This court will affirm an order terminating parental rights unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously applies or declares the law. *In Interest of T____ M. E____*, 874 S.W.2d 552, 559[4] (Mo.App.1994). This standard of review is consistent with the "clear, cogent and convincing" standard of proof required by § 211.447.2 in termination cases. *Id.* "The latter standard is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* at 559[5]. Permanent termination of a parent/child relationship is an awesome exercise of power by the state, and strict and literal compliance with the applicable statutes is required. *In Interest of M.H.*, 859 S.W.2d 888, 896[17] (Mo. App.1993).

Section 211.447 reads, in pertinent part:

"2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

. . .

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

 In this court, the juvenile officer concedes that the termination order was not based on the ground of abandonment, one of the three grounds for termination enumerated in § 211.447.2(1). Respondent's brief states: "The issue of abandonment as to Charles was not pled, nor tried, nor addressed in the order of the court. Therefore, it is not an issue that is properly before the court." That concession by respondent is helpful because the termination petition does not cite the specific statute on which termination was sought, and the judgment cites no statute.

At the hearing on the termination petition, the juvenile officer produced three witnesses: juvenile officer Mildred Lunsford, social worker Phyllis Hager, and the child. No exhibits were introduced by either side.

The juvenile officer's evidence was as follows:

### Mildred Lunsford

I filed this petition at the request of the child's aunt and uncle who had custody of her and no longer wanted to care for her. The child has been in the custody of the Division and in foster care since February 21, 1990. I wrote Charles a registered letter and heard from him a day or two later. As soon as Charles found out about this, he came here and contacted me as my letter told him to do. I do not know how the child came to be in the custody of her aunt and uncle. I have had no contact with Charles since.

### Phyllis Hager

I am a social worker for Family Services. In December 1990, I began working with the child as her case worker. She was having a lot of problems. She exhibited some lying and stealing and some emotional problems from the loss of her mother and from sexual molestation by a step-brother. In February 1990, she was placed in the foster care of Peggy. Peggy completed behavioral foster care training and we converted her to behavioral foster care so we could start a new program with the child to work out her problems. Peggy and I are still working out those problems.

I have had many contacts with Charles and told him why I was working with the child. When the child was placed in foster care, Charles visited every week, and the previous worker saw Charles every week. When I took the case over in December 1990, Charles continued to visit the child weekly until March 1992, when we started two visits a month. Charles has been maintaining two visits and has been very good about visitation.

I investigated the background of Charles and the child. In the divorce proceeding, the child was placed with her mother.

During the majority of his visits with the child, Charles brought her some item, a 50-cent item or a $15 or $20 item of clothing that she wanted, or knick-knacks. Once he brought her an ash tray with a nude lady on top of it.

Charles has not paid any money for the support of the child. He receives VA and Social Security benefits. We receive payments for the child's support through Charles's Social Security disability benefits. He did not provide the child with winter clothes or summer clothes. The child's

mother was killed in February 1989 in a train/car accident. A trust was set up in Arkansas for the child from the proceeds of insurance, and she won't be able to get the trust until she is 21.

Most of Charles's visits with the child are in my presence. I allow them to go to a local restaurant or Wal–Mart. I have observed entire visits and I have allowed them to go off by themselves. They get along well and enjoy each other's company. The child looks forward to the visits and has told me she loves her father. She wishes he would allow her to be adopted. Her major complaint is her father has promised her things and tells her they are waiting for her in Arkansas.

Charles buys her dinners as often as he can afford. No harm has come to the child when she has been with Charles away from me. The child tells me she wants to be able to see her father if she were adopted. Charles will not agree to the adoption.[2]

### The Child

I am in the sixth grade and I am 13. I went to kindergarten and grades 1 and 2 in Arkansas and the third grade in Oklahoma. In Arkansas I was living with my parents. They were divorced when I was in the second grade. I went to live with my mother and not my father. After the divorce, I did not see my father very often. I saw him at my mother's funeral but not after that. After my mother's funeral my sister took me to Oklahoma and I don't think my father knew where I was. I was kind of on the run with her. It was a year and a half before I got back to Missouri. I was living with my aunt in Greenville when I was taken into custody by the Division of Family Services.

When my father visits me, I have a good time, not always but once in a while. I tell him I want to be adopted. He always gets on my nerves and it bothers me. He tells me he is going to give me things. He showed me a bicycle and a puppy and took them back to Arkansas. He told me that's what I could have if I come and live with him. I love my father. I do not want to go and live with him. I want to be adopted. I know my father loves me.

The trial court's judgment included the following: "[T]he court finds that it is in the best interest of [the child] that the parental rights of [Charles] be and are hereby terminated *because his mental condition has been shown by competent evidence to be such that he is incapable of properly caring for and meeting the needs of this child and that there is no reasonable likelihood that his long term problems can be reversed and therefore they render him unable to knowingly provide this child the care, custody and control that she requires."* (emphasis added).

The trial court's judgment does not cite § 211.447.2(2) or (3). The emphasized portion of the judgment indicates that Charles's mental condition was the principal factor. Sections 211.447.2(2)(a) and 211.447.2(3)(c) contain identical language concerning the parent's mental condition. The record on appeal contains no evidence, competent or otherwise, to support the trial court's finding with respect to Charles's mental condition. There was no evidence to support findings, and none were made, on factors set forth in § 211.447.2(2)(b), (c), or (d). The trial court made no findings concerning the factors set forth in § 211.447.2(3)(a), (b), or (d).

The authority of the juvenile court to terminate the rights of a parent to a child requires "clear, cogent and convincing evidence" that one or more of the grounds for termination enumerated in § 211.447.2 exist. This record does not meet that requirement.

That portion of the judgment terminating the parental rights of Charles is reversed; the portion of the judgment denying Charles relief on his cross-petition is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.

---

**2.** During the direct examination of Phyllis Hager, she referred frequently to contents of "home studies" made by other persons. Charles's attor-
ney posed hearsay objections which were proper, but which were overruled. The home studies were not offered or received into evidence.