**In the Interest of H.R.R.**

**DIVISION OF FAMILY SERVICES, Respondent,**

v.

**V.W. (Natural Father), Appellant.**

**No. WD 52822.**

Missouri Court of Appeals, Western District.

May 20, 1997.

Sue Crane, Fulton, for appellant.

Maureen Monaghan, Columbia, for respondent.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

V.W. appeals the trial court's termination of his parental rights in relation to his daughter, H.R.R. Father claims that there was no substantial evidence to support the judgment and that his constitutional rights were violated by denying him visits with his daughter while he was incarcerated. Because we find the trial court terminated father's rights on a different statutory ground than that alleged in the Petition and father thereby did not receive adequate notice, and because the trial court failed to make all the factual findings required by Section 211.447.2(3), we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

H.R.R. was born on July 2, 1993, while her mother, R.R., was incarcerated at Renz Correctional Center in Cedar City. The Deputy Juvenile Officer filed a Petition alleging that H.R.R. was in need of care and treatment pursuant to Section 211.031.1(1) in that her mother was incarcerated and there were no known relatives who could currently provide care and support. It appears from these allegations that the Juvenile Officer was unaware of the name or location of the child's

father. On July 8, 1993, the juvenile court of Callaway County granted an Order of Protective Custody ordering that H.R.R. be placed in the temporary custody of the Division of Family Services for placement in foster care, and James Dowling was appointed as guardian ad litem.

On October 13, 1993, V.W. (hereinafter "father"), appeared and indicated that he wished to terminate his parental rights. Approximately four hours later, however, he changed his mind and called the juvenile officer and asked for visitation. Father also indicated a desire to have his daughter placed with her grandmother—father's mother—and asked that a home study be made of the grandmother's home.

Father had his first visit with his daughter on December 1, 1993. He saw her again on April 6 and June 28, 1994. Sometime in July 1994, juvenile workers told father that he would have to visit more frequently. At a permanency planning meeting, father agreed to visit his daughter twice each month. Between July and December 1994, however, father saw his daughter only three times: on July 28, August 15, and September 14, 1994. According to the terms of the plan, he should have visited a total of ten to twelve times. The record also shows that H.R.R. cried when visiting with her father, that the case worker characterized H.R.R. as "uncomfortable" during the visits, and that father never visited H.R.R. alone. Rather, he always came with his own mother (H.R.R.'s grandmother) or his sister. Father's mother visited H.R.R. on six occasions from June 1994 to January 1995.

After September 1994 father stopped visiting, and he was unable to visit once he was incarcerated sometime in October 1994 for a parole violation. In December 1994, however, father did send his daughter a Christmas basket that had been arranged through the prison. Father and father's mother also jointly sent H.R.R. clothes occasionally. Shortly after learning DFS issued a case plan recommending the termination of the mother's and father's parental rights, in February 1995, father also began sending H.R.R. cards from the prison.

■ Section 211.447.2, RSMo.1994 states that the juvenile court may terminate the rights of a parent if it finds that the termination is in the best interests of the child and it appears by clear, cogent, and convincing evidence that either: (1) the child has been abandoned; (2) the child has been adjudicated to have been abused or neglected; or (3) the child has been under the jurisdiction of the juvenile court for one year and "the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." § 211.447.2, RSMo 1994. Strict and literal compliance with the statutory requirements is necessary. *Matter of C.L.A.*, 899 S.W.2d 566, 568 (Mo.App.1995).

A Petition for Termination of Parental Rights was filed on April 25, 1995. It alleged that termination of father's parental rights would be in H.R.R.'s best interests, stating:

a. The juvenile is over one year of age at the time of the filing of this petition.

b. *The juvenile's father, has, without good cause and for a period in excess of six months, left the juvenile without any provision for financial support and without making arrangements to visit or communicate with the juvenile,* in that:

1) Juvenile's father, has failed to visit juveniles [sic] since September 14, 1994.

2) Juvenile's father, has neither contacted nor attempted to contact the juvenile by phone or letter.

3) Juvenile's father, has not contacted the Division of Family Services regarding the status or well-being of the juvenile since September 14, 1994.

4) Juvenile's father, has failed to contribute financially to the care and maintenance of the juvenile.

(emphasis added). Although the Petition did not cite any statutory section, its language clearly tracked and set forth the basis for

termination set out in Section 211.447.2(1)(b)—abandonment.

Father was still incarcerated when this Petition was filed, and at the time of the hearing on the Petition on March 26, 1996, but appeared at the hearing in person. Following the hearing the trial court issued an order terminating the mother's and father's parental rights. The basis on which he did so is inconsistent with the basis alleged in the petition, however. Although the Petition tracked the language of Section 211.447.2(1)(b), which sets forth when parental rights may be terminated for abandonment of the child for more than six months without making provision for the child, the trial court's order does not address the issue of whether the father abandoned the child in this way.

Rather, the court's order states that the Petition to Terminate is granted because the conditions which led the juvenile court to take jurisdiction of the children originally still persisted and those conditions were unlikely to be remedied. The father had not abandoned the child at the time jurisdiction was assumed, however; he did not even know of the child's existence. In addition, the trial court found that continuation of the parent-child relationship greatly diminished the juvenile's prospects for early integration into a stable and permanent home. This and the other language used by the court order track the basis for termination set out in Section 211.447.2(3),[1] whereas the Petition to Terminate had set forth the basis for termination set out in Section 211.447.2(1), that is, abandonment.

## II. ANALYSIS

■ Father appeals the trial court's termination of his parental rights. The trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. We review the facts and all reasonable inferences in the light most favorable to the trial court's order, and will reverse only if we are left with a firm impression that the judgment is wrong. *In Interest of J.M.L.*, 917 S.W.2d 193, 195 (Mo.App.1996); *In Interest of J.N.C.*, 913 S.W.2d 376, 379 (Mo.App.1996).

■ In this case, we must reverse the trial court's judgment. The Petition asserted termination was proper because of abandonment, pursuant to Section 211.447.2(1)(b). The trial court did not rule on the question of abandonment, however, but rather terminated father's parental rights under Section 211.447.2(3). The ground on which termination was based was thus not the ground on which the Petition to Terminate asserted that H.R.R.'s rights should be terminated. Yet, due process requires that "[t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared." *In Interest of D.M.J.*, 683 S.W.2d 313, 314 (Mo. App.1984) (quoting *In Interest of W.F.J.*, 648 S.W.2d 210, 216 (Mo.App.1983)). For this reason, we have previously recognized that it is necessary to terminate on a ground asserted in the Petition. *See, e.g. In Interest of M.K.P.*, 616 S.W.2d 72, 77 (Mo.App.1981) (where Petition alleged abandonment but also contained language which asserted that the parents had neglected to see the child for more than a year and had neglected to provide proper support, education, and care, Order terminating rights due to failure to rectify conditions which led to assumption of jurisdiction was not based on a different

---

**1.** More specifically the court's Conclusions of Law state in relevant part:

1. The juvenile has been under the jurisdiction of the Juvenile Court for a period in excess of one year prior to the filing of this petition.

2. The conditions which led to the assumption of jurisdiction still persist and there is little likelihood that these conditions will be remedied at an early date so that the juvenile can be returned to the parents in the near future, and continuation of the parent-child relationship greatly diminishes the juvenile's prospects for early integration into a stable and permanent home.

3. The efforts of the Division of Family Services have failed to aid juvenile's parents on a continuing basis in adjusting their circumstances or conduct to provide a proper home for the juvenile.

. . . .

6. There was no evidence to show that there is a mental condition rendering juvenile's mother and father unable to care for the juvenile.

ground for termination than that contained in the Petition and therefore was not improper).

Here, the Petition, advocating termination of parental rights because father had abandoned H.R.R., did not fairly advise father that he would be required to defend allegations that he had failed to correct conditions that led to the court's assumption of jurisdiction over H.R.R. or that continuation of the parent-child relationship greatly diminishes H.R.R.'s prospects for early integration into a stable home. We therefore reverse and remand so that the trial court can address the basis for termination set forth in the Petition, or in any amended Petition filed.

■ We further note that, even had the Petition alleged termination under Section 211.447.2(3), as ordered by the court, we would be required to reverse and remand because the trial court failed to make findings on all issues required by Section 211.447.2(3)(a)-(d). Those subsections state that:

> In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
>
> (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
>
> (b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
>
> (c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
>
> (d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated

so as to enable the parent to consistently provide such care, custody and control. § 211.447.2(3).

■ The court is required to make specific findings on *each* of these four factors. *In Interest of K.T.*, 946 S.W.2d 246, 247 (Mo. App. E.D. 1997); *In Interest of D.A.H.*, 921 S.W.2d 618, 621–22. (Mo.App.1996). If a factor is not relevant to the case, the court should state why the given factor is not relevant. *K.T.* at 247; *D.A.H.*, 921 S.W.2d at 622.

Here, the court's order arguably minimally addressed three of the four factors on which findings are required under Section 211.447.2(3)(a)-(d). Thus, the order stated that while father had agreed in a treatment plan to visit H.R.R. twice every month, he had in fact only visited her three times over the course of six months; that DFS's efforts had failed to aid H.R.R.'s parents adjust their circumstances or conduct to provide a proper home for H.R.R.; and that there was no evidence of a mental condition rendering father unable to care for H.R.R. The order did not, however, make any finding at all in regard to chemical dependency, as required by paragraph (3)(d). Even if chemical dependence was not an issue in this case, the court was obligated to state that grounds for termination under that subsection did not exist. *See, e.g., In Interest of J.A.A.*, 829 S.W.2d 79, 81 (Mo.App.1992).

■ Finally, we address father's claims that his right to Equal Protection of the laws as guaranteed by the United States Constitution was violated by DFS's refusal to allow him visitation with H.R.R. when he was incarcerated, while at the same time allowing H.R.R. visitation with her mother while she was incarcerated.

V.W. has raised this claim for the first time on appeal, and therefore has failed to preserve it. *In Interest of J.Y.*, 637 S.W.2d 670 (Mo. banc 1982); *Killian v. State Farm Fire & Cas. Co.*, 903 S.W.2d 215 (Mo.App. 1995). In any event, the only evidence in the record on this subject was a statement by Becki Baird, a children's service worker with the Division of Family Services, that her

office was not allowed to make prison visits to a male prisoner. Assuming, without deciding, that this was actually State policy, and that it violated father's constitutional rights, the appropriate remedy would be a suit to require DFS to allow visits to male prisoners. Such a policy is relevant here only insofar as it shows that, on remand, failure to ask H.R.R. to visit the prison should not be held against the father if such visits in fact were not allowed by the State.

For the reasons set out above, we reverse and remand for further proceedings in accordance with this opinion.

All concur.