In the interest of A.D.R., a child under seventeen years of age.

**Sandy Hammers, Deputy Juvenile Officer of Greene County, Respondent,**

v.

**R.R., Appellant.**

No. 23229.

Missouri Court of Appeals, Southern District, Division Two.

July 12, 2000.

Application for Transfer to Supreme Court Denied Aug. 3, 2000.

Application for Transfer Denied Oct. 3, 2000.

John E. Kelly, Springfield, for appellant.

Bill Prince, Springfield, for respondent.

Lisa A. Ghan, Springfield, guardian ad litem, for A.D.R.

CROW, Judge.

A deputy juvenile officer filed a petition to terminate the parental rights of R.R. ("Mother") and R.R. ("Father")[1] to A.D.R.

---

1. Because Mother's forename and Father's    forename begin with the letter R, as do their

("Child"). The juvenile court,[2] after hearing evidence per § 211.459, RSMo 1994, entered judgment as prayed. Mother, alone, appeals.

The statute setting forth the grounds for terminating parental rights is § 211.447, RSMo Cum.Supp.1998. It took effect July 1, 1998, and was in force at the time of the hearing and judgment. It reads, in pertinent part:

"2 .... a petition to terminate the parental rights of the child's ... parents shall be filed by the juvenile officer ... when:

(1) Information available to the juvenile officer ... establishes that the child has been in foster care for at least fifteen of the most recent twenty-two months; or

....

4. The juvenile officer ... may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

...

(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development;

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circum-

---

surnames, this opinion refers to them as "Mother" and "Father," respectively, instead of by their initials.

**2.** Section 211.021(3), RSMo 1994, provides that as used in chapter 211, the term "juvenile court" means the juvenile division of the circuit court.

stances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control; or

. . . .

5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer . . . if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2 . . . or 4 of this section.

6. When considering whether to terminate the parent-child relationship pursuant to subsection 2 . . . of this section or subdivision . . . (2), (3) . . . of subsection 4 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm."

Child was born September 25, 1994.

The evidence[3] and reasonable inferences, viewed in a light favorable to the judgment, *In the Interest of A.M. C.,* 983 S.W.2d 635, 636–37[3] (Mo.App. S.D.1999); *In the Interest of M.N. M.,* 906 S.W.2d 876, 878[2] (Mo.App. S.D.1995), established the following facts.

On August 14, 1995, an investigator employed by the Division of Family Services ("DFS") received an "abuse report" regarding Child. The investigator questioned Mother. The investigator related:

"[Mother] told me that on the evening before, that her and [Father] had gotten into a physical altercation. And that ultimately [Father] had taken [Child] outside to the truck and was going to leave with him and said, 'Try to take him from me.' And she tried to stop him from going. And at some point [Child] was dropped. And then she bent down to pick [Child] up and [Father] kicked her—or kicked the baby. She thought maybe he was trying to kick her, but kicked the baby in the face."

Describing the injuries she observed on Child, the investigator said: "His face was

---

**3.** All of the evidence was presented by the deputy juvenile officer. Mother and Father attended the hearing with their lawyer, but neither testified.

bruised and swollen. And I think there were some cuts on him."

The investigator took no steps to remove Child from Mother's custody because, explained the investigator, Mother said she was "divorcing" Father and had "filed" for an order of protection.[4] The investigator warned Mother she would risk losing custody of Child if Child had contact with Father.

On August 31, 1995, another DFS investigator was notified that Child had been "taken into protective custody" by a "police detective" or a juvenile officer. The investigator questioned Mother about whether she had allowed Father to have contact with Child. Mother admitted she had allowed contact despite the admonition of August 14, 1995.

Child was placed in foster care and a petition was filed in the juvenile court averring Child was neglected and abused. The juvenile court placed Child in the "temporary legal custody" of DFS on or about September 7, 1995, and ultimately "adjudicated [Child] neglected and abused in a jurisdictional hearing." This court infers Child stayed in foster care throughout that period and has remained in foster care since the adjudication.

The petition to terminate Mother's and Father's parental rights was filed June 30, 1998. By then, Mother and Father had become parents of two more children. As best this court can determine, one of the children ("Child 2") was born in March 1997; the other child ("Child 3") was born in March 1998.[5]

At the hearing on the termination petition (March 22, 1999), there was no evidence that any proceeding was under way to remove Child 2 or Child 3 from Mother's or Father's custody.

The juvenile court made meticulous findings on the multitudinous factors specified in § 211.447 (quoted in pertinent part earlier). This opinion sets forth those findings, identifying the specific part of the statute to which each finding pertains.

As to § 211.447.2(1), the finding was:

"The minor child has been in alternative care for fifteen (15) of the last twenty-two (22) months."

As to § 211.447.4(2), the finding was:

"The child has been abused and neglected and was adjudicated to have been abused and neglected by the Juvenile Court of Greene County, Missouri in Cause Number 195JU0375[.]"

As to § 211.447.4(2)(a) and § 211.447.4(2)(b), the finding was:

"There was no evidence presented that this factor existed."

As to § 211.447.4(2)(c), the finding was:

"The evidence indicated that the mother and father had engaged in domestic violence before the child and that during the violence between the parents, the minor child was dropped on his head on concrete. The father further kicked the minor child in the head causing injuries to said child."

As to § 211.447.4(2)(d), the finding was:

"Evidence was presented that the father and mother failed to consistently provide the minor child with food, clothing, shelter or education as defined by law."

As to § 211.447.4(3), the finding was:

"The child has been under the jurisdiction of the juvenile court for a period of in excess of one year, and the condi-

---

4. Mother told the investigator about two earlier physical altercations with Father. The first occurred while Mother was pregnant with Child. Father "knocked" Mother to the floor and held her down. The second incident occurred around April or May 1995. On that occasion, Father "kicked the door open and choked her."

5. Mother's brief states the dates of birth are set forth in a document received in evidence as Exhibit 13 in the juvenile court. No exhibit from the juvenile court has been filed with this court.

tions that led to the assumption of jurisdiction by this court still persist or conditions of a potentially harmful nature continue to exist, to-wit: the mother's and father's inability to properly parent the child and to protect the child and provide him with a safe environment; the continued instability on the part of the parents, the parents['] failure to utilize counseling to address their domestic violence issues; and the lack of interest shown to the minor child by father and mother, and that there is little or no likelihood that those conditions can be remedied at an early date so that the child could be returned to the mother or father in the near future, and the continuation of the parent and child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home."

As to § 211.447.4(3)(a), the finding was:

"The Court finds that the mother made little significant progress in completion of her four court ordered treatment plans: (a) During the time the child was in foster care, the mother provided some gifts but did not regularly contribute monetary support for the minor child; (b) The mother did not maintain a stable and permanent place of residence. The evidence indicated that the mother moved frequently and did not notify [DFS] of the moves in a timely manner; (c) The mother did not regularly attend the therapy deemed necessary by her psychological evaluation; She terminated therapy on her own without the approval of her therapist or social worker; (d) The mother continues to reside with her husband; (e) The mother has not visited with the minor child on a regular basis. While twice monthly visits were available to the mother, she chose to exercise visitation only on a one time per month average; (f) She failed to demonstrate her ability to provide for the child by failing to maintain stable employment; (g) She

did not cooperate with [DFS]. She failed to keep [DFS] advised of moves and current living arrangements." [6]

As to § 211.447.4(3)(b), the finding was:

"The Court finds ... that the juvenile office and [DFS] have failed to aid the mother and father in adjusting their circumstances to provide a proper home for the minor child."

As to § 211.447.4(3)(c), the finding was:

"There was no evidence presented that this factor existed."

As to § 211.447.4(3)(d), the finding was:

"There was no evidence presented on this factor."

As to § 211.447.5, the finding was:

"[T]he Court finds and concludes that the termination of parental rights of [Mother] and [Father] in, to and over the minor child ... would be in the best interests of the minor child."

As to § 211.447.6(1), the finding was:

"There was no evidence presented that the minor child had any emotional ties to the mother or father."

As to § 211.447.6(2), the finding was:

"There was evidence presented that the mother and father have not had consistent contact with the minor child."

As to § 211.447.6(3), the finding was:

"There was no evidence presented that the father or mother provided regular or consistent support for the minor child."

As to § 211.447.6(4), the finding was:

"[T]here are no possible services available that would bring about lasting parental adjustment enabling the return of the minor child to the mother or father within an ascertainable period of time."

As to § 211.447.6(5), the finding was:

"The mother and father have shown a disinterest in and lack of commitment to the said minor child."

As to § 211.447.6(6), the finding was:

---

**6.** The juvenile court made extensive findings regarding Father as to § 211.447.4(3)(a). Be-

cause Father has not appealed, this opinion omits those findings.

"There was no evidence presented on this factor."

As to § 211.447.6(7), the finding was:

"The child was subjected to physical abuse by the father under circumstances that indicated that the mother knew or should have known that such acts were being committed toward the said child."

The juvenile court further found that the inability of Mother and Father to provide proper care, custody and control for Child is "potentially harmful to . . . child should he be returned to that environment."

Having made the findings recited above, the juvenile court held there was clear, cogent and convincing evidence supporting three grounds to terminate Mother's and Father's parental rights to Child. The three grounds were: § 211.447.2(1), § 211.447.4(2) and § 211.447.4(3).

Mother's brief presents one point relied on; it reads:

"The trial court erred in terminating the parental rights of [Mother] because the juvenile office's purported proof that [Mother] and her husband failed to rectify conditions that led to [Child's] removal was against the weight of the evidence that included two normal after-born siblings in that [Mother] and her husband had to have rectified the dysfunctional household conditions in order to make a safe and appropriate environment in which the siblings lived and into which [Child] should have been returned[.]"

Mother's claim of error appears to be directed to only one of the three grounds for termination found by the juvenile court, i.e., § 211.447.4(3), sometimes characterized as "failure to rectify." *See: In the Interest of R__ L__ K__,* 957 S.W.2d 778, 782 (Mo.App. S.D.1997); *In the Interest of D__ L__ C__,* 834 S.W.2d 760, 764 (Mo.App. S.D.1992).

■ Under § 211.447.5, a juvenile court may terminate parental rights if it finds termination is in the child's best interest and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. *In the Interest of M.N.M.,* 906 S.W.2d 876, 879[10] (Mo.App. S.D.1995); *In the Matter of C.L.A.,* 899 S.W.2d 566, 568[1] (Mo.App. S.D.1995). The existence of even one statutory ground for termination is sufficient if termination is in the child's best interest. *M.N.M.,* 906 S.W.2d at 879[10]; *In the Interest of L__ E__ E__,* 839 S.W.2d 348, 352[2] (Mo.App. S.D.1992).

■ Neither Mother's point relied on nor the argument following it appears to challenge the sufficiency of the evidence to support the other two grounds for termination found by the juvenile court, i.e., § 211.447.2(1)—Child had been in foster care for at least fifteen of the most recent twenty-two months—or § 211.447.4(2)—Child had been abused and neglected, and was adjudicated so by the juvenile court in an earlier proceeding. Consequently, even were Mother's attack on the "failure to rectify" ground— § 211.447.4(3)—meritorious, it would not compel reversal. Furthermore, as henceforth explained, Mother's attack on that ground is without merit.

Mother maintains that because authorities had taken no steps to remove Child 2 or Child 3 from her or Father's custody prior to the hearing on the termination petition, the juvenile court's finding that Mother and Father failed to rectify the conditions that led to Child's removal from their custody is against the weight of the evidence.

Mother's hypothesis is refuted by *In the Interest of H.P., Jr.,* 815 S.W.2d 143 (Mo. App. E.D.1991). There, the juvenile court terminated a mother's parental rights to her four oldest children (all sons), each of whom was removed from her custody by the juvenile court and placed in the legal and physical custody of DFS before she gave birth to her youngest child (a daughter). *Id.* at 143, 146. Affirming the termination, the appellate court said: "Evidence that [the] mother adequately cared for her

young daughter ... does not bear on the issue of whether [the] mother could provide the necessary care and control of her four older sons." *Id.* at 146.

The facts in *H.P., Jr.* are similar to those in the instant case in that the mother there failed to successfully complete social service agreements with DFS, failed to visit the four oldest children regularly, and failed to maintain a stable home. *Id.* at 145–46. Furthermore, the four oldest children had "limited emotional ties" to the mother, *id.* at 146—a circumstance similar to the instant case, where the juvenile court found there was no evidence that Child had any emotional ties to Mother or Father. Finally, *H.P., Jr.* is like the instant case in that the oldest child in that case had been in foster care four and a half years at the time of the hearing on the termination petition. *Id.* Here, Child had been in foster care three and a half years at the time the termination petition was heard.

■ The absence of an effort by authorities to remove Child 2 and Child 3 from Mother's and Father's custody did not compel the juvenile court to infer Mother and Father had rectified the conditions that led to Child's removal. On that subject, one DFS social service worker testified:

> "[Mother and Father] have been out of county ... a lot ... and I haven't seen the kids in the home. When they are in county, they're living with—usually [Mother's] family. And I'm not notified of that until ... they've been there for a while. So my ability to make home visits in the home has been hard. When I'm there, the children appear well cared for[.] ... I've never seen [Child 3] inside the home where they've resided. They've been out of county. I've seen [Child 2] inside the home probably half a dozen times.... They have an out of county worker who visits the home regularly, or at least attempts to. [Mother] has canceled those appointments....

The current worker, I believe, has only visited one time. She told me that she didn't feel comfortable making any kind of judgment. [Child 2] was fine when she was there, but she felt she needed to visit more often in order to state whether the children were safe."

The guardian ad litem who appeared for Child in the juvenile court urges this court to affirm the judgment.[7]

■ Where, as here, a juvenile court applies the correct standard of proof, a judgment terminating parental rights will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *In the Interest of D.G.N., Jr. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). Applying that standard, this court denies Mother's assignment of error.

Judgment affirmed.

GARRISON and BARNEY, JJ., concur.

---

**7.** Although the guardian ad litem filed no brief, the guardian ad litem adopted the brief filed by the deputy juvenile officer praying for affirmance.