775 S.W.2d 167 (1989)
R.L.P., et al., Respondent,
v.
R.M.W., Appellant.
No. 55404.
Missouri Court of Appeals, Eastern District, Division Three.
June 6, 1989.
Motion for Rehearing and/or Transfer Denied August 1, 1989.
*168 Nancy E. Emmel, St. Louis, for appellant.
Ellyn L. Sternfield, Clayton, for respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied August 1, 1989.
HAMILTON, Judge.
The natural mother, R.M.W., appeals the judgment terminating her parental rights in two of her four minor children, a daughter, R.L.P., born April 27, 1984, and a son, C.P., born November 22, 1985.
Prior to judgment, R.L.P. and C.P. had been under the continuing jurisdiction of the St. Louis County Juvenile Court. In December, 1984, the trial court, having assumed jurisdiction over R.L.P., ordered legal custody of the child placed with the Missouri Division of Family Services (hereinafter DFS). In February, 1986, the trial court ordered physical custody of R.L.P. placed with DFS for foster care and, in June, 1987, the court transferred her physical custody to the Salvation Army Hope Center. C.P., formally placed under Juvenile Court jurisdiction in April, 1986, was ordered into the legal and physical custody of DFS for foster care.
On August 19, 1986, the court approved a service plan, signed by Appellant, her DFS social worker, a deputy juvenile officer, and a juvenile court commissioner, designed "to help parents obtain physical custody *169 of their children who are not presently living with them." Under the plan, Appellant agreed, inter alia, to (1) visit each child at least twice monthly; (2) obtain and maintain adequate housing for herself and her children; (3) obtain a psychological/psychiatric evaluation and undergo counseling, if recommended; (4) obtain twice monthly drug screenings and drug abuse counseling; (5) submit a day care plan for the social worker's approval; (6) meet monthly with the social worker. DFS agreed, inter alia, to (1) set up visits between parent and children upon request; (2) refer Appellant to housing resources upon request; (3) refer and pay for psychological/psychiatric evaluation and counseling; (4) refer Appellant to resources for drug abuse counseling upon request; (5) refer Appellant to day care resources upon request. In addition, the service plan contained a warning that if Appellant failed to conform to the plan or if the plan were unsuccessful, the court might terminate her parental rights.
On March 28, 1988, the Juvenile Officer filed Petitions to Terminate Parental Rights with respect to R.L.P. and to C.P. Following an evidentiary hearing on both petitions in June, 1988, the juvenile court ordered termination pursuant to Sections 211.447.2(1), (2), (3) RSMo (1986). The court based its termination of Appellant's parental rights essentially upon her failure to comply with the requirements of the DFS service plan. The court found that Appellant
has, without good cause, left said [children] without any provisions for parental support and without making arrangements to visit or communicate with [either] child, although able to do so, for a period of six months or longer immediately prior to the filing of the Juvenile Officer's Petition to Terminate Parental Rights on March 28, 1988.
With reference to the evidence adduced at hearing, the court found that
[t]he competent evidence presented showed that the respondent-mother has repeatedly and continuously failed, although physically or financially able, to provide the children with food, adequate clothing, shelter or other care and control necessary for their physical, mental or emotional health and development.
In addition, the court determined that each child had been under the jurisdiction of the juvenile court for over one year and "continuation of parent-child relationships greatly diminishe[d] the children's prospects for early integration into a stable and permanent home."
Although finding that Appellant "voluntarily and knowingly" agreed to and signed the DFS service plan, the trial court determined that she "totally and completely failed to comply with the requirements regarding drug screenings, housing, and submission of a day care plan." Moreover, although Appellant complied with the plan's visitation requirements from August, 1986 to January, 1987, her compliance thereafter was "minimal and sporadic." In contrast, the court found DFS made reasonable efforts to fulfill its responsibilities pursuant to the service plan. Based upon the evidence presented, the court concluded that termination of parental rights was in the best interests of the two children.
On appeal, Appellant contends (1) the trial court's order of termination was against the weight of the evidence, and (2) the trial court failed to apply the proper standards for termination of parental rights under Sections 211.447.2(2)(a) and (b) and 211.447.2(3)(c) and (d), RSMo. (1986).
In order to terminate parental rights, a trial court must find that termination is in the best interests of the child and that clear, cogent, and convincing evidence establishes a violation of one or more statutory grounds for termination. Section 211.447.2 RSMo. (1986); In Interest of M.E.W., Jr., 729 S.W.2d 194, 195 (Mo. banc 1987); In Interest of A.M.K., 723 S.W.2d 50, 52 (Mo.App.1986). Clear, cogent, and convincing evidence is that evidence which "`instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.'" In Interest of C.M.M., 757 S.W.2d 601, 604-5 (Mo.App.1988) (quoting In re *170 Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984)). Moreover, evidence in the record that might support another conclusion does not necessarily establish that the trial court's decision is against the weight of the evidence. Id.
In reviewing a case involving termination of parental rights, an appellate court must affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. In Interest of A.L.B., 743 S.W.2d 875, 879 (Mo.App.1987); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). It must also defer to the trial court's assessment of the credibility of witnesses. In Interest of M.E.W., Jr., 729 S.W.2d at 195-6. When confronted with conflicting evidence in the record, an appellate court should review the facts in the light most favorable to the trial court's order. Id. at 196.
With these principles in mind, we consider Appellant's contention that the trial court's order is against the weight of the evidence. In a termination of parental rights proceeding, a trial court's order is sufficient to support termination if at least one of the grounds for termination was adequately pleaded and proved. In Interest of J.I.W., 695 S.W.2d 513, 514 (Mo.App. 1985). In the instant case, the Petitions to Terminate Parental Rights filed with respect to R.L.P. and C.P. and the evidence adduced at hearing offer clear, cogent, and convincing support for the trial court's order of termination under Sections 211.447.2(1)(b) and 211.447.2(2)(d).
Substantial credible evidence supported the allegation and the trial court's finding of abandonment. In February, 1986, Appellant herself requested that DFS take her children because, at that time, she was "running the streets and using drugs and ... couldn't stay home." At the termination hearing in June, 1988, Appellant admitted that she had failed to visit C.P. since July, 1987, and she had visited R.L.P. only twice in 1988, the last visit occurring in February.
Appellant blamed her failure to visit the children on difficulty communicating with her DFS caseworker, a lack of transportation, and the lack of available baby-sitters for her two younger children presently in her custody. Evidence, however, disclosed that Appellant never asked her caseworker's supervisor about possible reassignment to another caseworker. She did raise the issue at a hearing in July, 1987, before a juvenile court commissioner who informed her that he was unable to reassign DFS caseworkers. Although Appellant understood this to mean she must learn to work with her current caseworker, she thereafter failed to contact the caseworker as required by the service plan.
Appellant also knew she was supposed to visit R.L.P. weekly at the Salvation Army Hope Center and had been furnished bus tickets to travel there. Appellant visited only twice in November, 1987, and twice in February, 1988, even though she conceded R.L.P. "needed her mother" and her failure to visit hurt the child. While attending an in-patient drug program at St. Mary's in September, 1987, Appellant requested passes, but never requested one to visit C.P. or R.L.P. After completing another in-patient drug program at Christian Northwest Hospital in April, 1988, she failed to visit the children, although she was then attending two A.A. meetings and one aftercare meeting each week.
With respect to the baby-sitting problem, Appellant testified her younger children stayed with their godparents while she was hospitalized for drug treatment in March and April, 1988. She failed, however, to ask them to babysit while she visited R.L.P. and C.P. Nor had she asked her husband, whom she continued to see, to care for their children so she might visit R.L.P. and C.P. The record thus demonstrates by clear, cogent, and convincing evidence that Appellant abandoned R.L.P. and C.P. The trial court's finding of abandonment pursuant to Section 211.447.2(1) is not clearly erroneous.
Substantial credible evidence also supports the trial court's finding that the children were neglected pursuant to Section *171 211.447.2(2). As required by that provision, the trial court properly considered and made findings with respect to each of the four conditions or acts enumerated in its subparts. Because the four subparts of Section 211.447.2(2) are listed disjunctively, finding the presence of all four conditions or acts is unnecessary in order to terminate parental rights pursuant to this section. The presence of one listed condition or act suffices to support termination.
The trial court found that the evidence supported termination pursuant to subpart (d) of Section 211.447.2(2), which requires the trial court to consider
[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development.
Appellant suggests, however, that her receipt of Aid to Dependent Children and the failure of DFS to request her to support R.L.P. and C.P. render the court's finding erroneous. We disagree.
Since May, 1986, Appellant furnished R.L.P. and C.P. neither food, clothing, shelter, education, nor other necessary care. Yet, after relinquishing custody in February, 1986, she worked for six months at Church's Chicken and for approximately one week in 1987 at a cleaning company while simultaneously supporting a drug habit that cost between $100 and $875 weekly.
Apart from her drug addiction and the hospitalizations resulting therefrom, the record discloses no reason Appellant was incapable of holding a job or was physically unable to provide for her children. Even assuming her sole source of income was Aid to Dependent Children, in the absence of evidence that Appellant was incapable of employment, she can be considered financially able to support her children who are in the custody of DFS. See In Interest of R.E.C., 716 S.W.2d 879, 884 (Mo.App. 1986).
In addition, DFS was under no duty to request that Appellant contribute to the support of her children while they were in the custody of DFS because a "demand was not required to impose upon the mother a duty for some responsibility for the support of her children. The fact that support was supplied from another source does not obliterate that duty." In Interest of M.B.A., 709 S.W.2d 941, 947 (Mo.App. 1986). The trial court's finding of neglect pursuant to Section 211.447.2(2)(d) is not clearly erroneous.
After a trial court determines the existence of one or more grounds for the termination of parental rights, it must then decide whether that termination is in the best interests of the child. In Interest of R.H.S., 737 S.W.2d 227, 236 (Mo.App.1987). What constitutes the best interests of a child is a conclusion based upon the evidence adduced. Id. Moreover, a conclusion that finds termination in the best interests of the child is necessarily based upon those considerations that also establish grounds for termination. Id. In reviewing whether the trial court applied the correct standard of proof, we must give due regard to its assessment of witness credibility, and we must sustain its decision unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985).
In the present case, substantial credible evidence supported the finding by the trial court that termination was in the best interests of the children. As required by statute, the trial court evaluated and made findings as to the first five of the seven factors set forth in Section 211.447.3, which it found applicable and appropriate to this case.
First, the trial court found that C.P. had no emotional ties to Appellant, and R.L.P. had weak emotional ties to her. Appellant does not dispute the absence of emotional ties between herself and C.P. Substantial evidence also supports the finding of weak emotional ties between Appellant and R.L.P. Although a "warm" relationship *172 appeared between them during Appellant's initial visits to R.L.P., by May, 1988, the child neither appeared to know who "mommy" was nor asked any questions about her mother. While at the Salvation Army Hope Center, R.L.P. never asked Appellant about going home with her. Nor did she inquire about or express anything about her mother to the staff, other than asking if she would have a visit with her mother. According to a social worker with the Salvation Army, R.L.P. had a problem bonding with caretakers that was indicative of a lack of parental bonding. The Salvation Army staff tried to encourage frequent visits in order "to form an attachment or establish a bond."
The trial court's finding that Appellant was disinterested or lacked commitment to her children is evidenced by her paucity of visits. The evidence amply supports the trial court's finding of sporadic and irregular visitation followed by Appellant's cessation of contact with C.P. after July, 1987, and with R.L.P. after February, 1988. Contrary to Appellant's contention, the evidence also supports the trial court's finding that, although she was employable, Appellant failed to support the children. While the children were in the custody of DFS, she had obtained two jobs, holding one for a period of six months, and had also supported an expensive drug habit. Yet, she failed to discharge her duty to support her children.
Finally, the trial court's finding that additional services would be unlikely to bring about a lasting adjustment by Appellant thereby enabling a return of the children to her is supported by the record. Psychological evidence indicated that Appellant's low intellectual functioning reduced her ability to respond to training and education, and her lack of motivation further suggested minimal likelihood for change. Moreover, given that Appellant failed to take advantage of services already available to her, referral to additional services was not indicated. Based upon the evidence, the trial court's conclusion that termination was in the best interests of the children is not clearly erroneous.
In her second point on appeal, Appellant asserts the trial court failed to apply the proper standard for termination of parental rights under Sections 211.447.2(2), subparts (a) and (b), and 211.447.2(3), subparts (c) and (d). Because we have determined that the record supports termination pursuant to Section 211.447.2(2)(d) as well as Section 211.447.2(1)(b), we must affirm the judgment of the trial court, regardless of the merit of Appellant's second point. Accordingly, we decline to address it.
The judgment of the trial court is affirmed.
DOWD, P.J., and SIMON, J., concur.