**In the Interest of L., N.M.R., a Minor.**

No. 64377.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 1, 1994.

Rehearing Denied Dec. 14, 1994.

John R. Bird, St. Louis, for appellant.

Donna Lyn Head, Bert L. Gates, St. Louis, for respondent.

CRAHAN, Judge.

Father appeals from an order of the Juvenile Division of the Circuit Court of the City of St. Louis terminating his parental rights with respect to his minor daughter, N.M.R.L.[1], pursuant to § 211.447 RSMo Cum.Supp.1993.[2] We affirm.

Daughter was born out of wedlock to Father and Mother on May 19, 1989. She was placed in foster care with the Missouri Division of Family Services ("DFS") on or about July 31, 1989 due to allegations of physical abuse. The juvenile court acquired jurisdic-

---

1. The parental rights of Mother were also terminated in the same order. However, Mother has not appealed the termination of her parental rights.

2. All statutory references are to RSMo Cum. Supp.1993 unless otherwise indicated.

tion over daughter on November 2, 1989 based on a finding she had been physically abused. Custody of daughter was then transferred to DFS. An order of disposition was also entered setting forth certain conditions precedent to the return of daughter to her parents.

On January 29, 1990, Father pled guilty to two counts of rape and was sentenced to two seven year sentences, to be served concurrently. The rape victims in each case were the two minor sisters of Father, who were seven and nine years old at the time of the incidents. Father has been incarcerated at the Farmington Correctional Center since July 1989.

While incarcerated at the correctional facility, Father was required to participate in the Missouri Sexual Offender Program ("MOSOP") pursuant to § 589.040 RSMo Cum.Supp.1993. The program offers psychotherapy, behavior therapy and cognitive restructuring for all sexual offenders. Father started the program in November 1991 but was dismissed from the program in October 1992 because of a disciplinary violation. During the program Father received treatment from two psychologists. As of the termination hearing date, Father had yet to complete the program.

Father was incarcerated when daughter was two months old and has seen daughter only once since that point. The one visit took place on December 30, 1992. Father had requested additional visits which were denied.

On February 23, 1993, the Juvenile Officer of the Juvenile Division filed a petition to terminate Father's parental rights over daughter, alleging two grounds for termination under § 211.447. The first ground alleged the child was adjudicated to have been abused and Father has committed acts of incest with two children in the family, to-wit his sisters. *See* § 211.447.2(2)(c). The second ground alleged that daughter had been under the jurisdiction of the juvenile court for over one year and that the conditions which led to the assumption of jurisdiction still persist and/or conditions of a potentially harmful nature continue to exist. *See* § 211.447.2(3).

A hearing was held on June 17, 1993. The two psychologists from MOSOP who evaluated Father testified as to their observations. The first psychologist testified that it would be potentially harmful and dangerous for a four year old to be placed in the unsupervised custody of Father. The second psychologist also opined that Father should have no unsupervised contact with any children under the age of eighteen.

On June 18, 1993, the court entered its decree terminating Father's parental rights. In the decree, the court made detailed findings supporting termination on the statutory grounds set forth in § 211.447.2(2) and (3).

■ A court may terminate parental rights if it finds termination is in the best interests of the child and one or more of the statutory grounds listed in § 211.447.2 is established by clear, cogent and convincing evidence. *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 169 (Mo.App.1989); *In Interest of J.C.G.*, 743 S.W.2d 449, 452 (Mo.App.1987).

■ When reviewing a court's decision to terminate parental rights, we are to affirm its decision unless no substantial evidence supports it, unless it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In considering the sufficiency of the evidence, we view the evidence and its reasonable inferences in the light most favorable to the family court's order. *In Interest of M.H.*, 859 S.W.2d 888, 892 (Mo.App.1993). We also give deference to the court's ability to judge the credibility of the witnesses. *Id.* The court's judgment will be reversed only when we are firmly convinced that it is wrong. *Id.*

■ In the decree, one of the grounds for termination was based on the court's finding that daughter has previously been adjudicated as abused and that Father had committed acts of incest with two children in the family, to-wit his two younger sisters. The court also found termination of all parental rights is in the best interest of the child. On appeal, Father maintains that acts of incest involving his sisters do not constitute

grounds for termination of his parental rights as set forth in § 211.447.2(2)(c).[3]

Section 211.447.2(2)(c) provides:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, ... if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

\*     \*     \*     \*     \*     \*

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

\*     \*     \*     \*     \*     \*

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family;

\*     \*     \*     \*     \*     \*

Father argues that he did not commit any "severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family." Father maintains that "any child in the family" is to be interpreted narrowly to mean only the children of parent, *i.e.* only Father's own children. Because the victims of Father's convicted rapes were his sisters, and not his daughters, Father argues those sexual acts do not fall within subparagraph (c) and should therefore not be considered against him. We disagree.

No definition of "family" is provided in Chapter 211; however, in construing the statute we are to keep in mind the purposes the legislature intended to accomplish and the evils it meant to cure. *In Interest of*

*A.M.B.*, 738 S.W.2d 128, 130 (Mo.App.1987). The legislative intent in enacting Chapter 211 is to facilitate the care, protection and discipline of children. § 211.011 RSMo 1986. By using the word "family" in lieu of a more restrictive term, the legislature recognized that adults have the potential to abuse children with whom they have a close, familial relationship. *A.M.B.*, 738 S.W.2d at 130. "When one of those adults has severely or repeatedly physically abused any such child, his propensity to such conduct subjects him to forfeiture of parental rights to other children." *Id.*

In *A.M.B.*, the court held that the term "family" as used in § 211.447.2(2)(c) included a child who was unrelated by blood or adoption to the parent but did reside with the parent. In that case, the father challenged the termination of his rights to A.M.B. A.M.B. was born to father and mother, who were unmarried but living together. Also living with them was mother's other child by a different man. Father was charged and pled guilty to Class D felony child abuse of mother's other child. While he was incarcerated, A.M.B. was born. The father argued on appeal that termination under § 211.447.2(2)(c) was improper in that the abused child was not a "child in the family" at the time of the abuse because at that time he was not married to the mother of that child and he was not a parent of that child by blood or adoption. Construing the provision liberally, the court found the legislative intent to protect children would be served by terminating father's rights even though the abused child was not his son. Thus, the court held that "[f]or a 'family' relationship to exist, there is no requirement in the statutes or case law that the relationship be encumbered with the legal obligations of marriage, adoption or blood kinship." *Id.* at 131.

Although blood kinship is not essential to support a finding that a child is "in the family" for purposes of § 211.447.2(2)(c), this does not mean, as Father apparently sug-

---

**3.** Father also raises a constitutional issue, asserting that § 211.459.4 "is fundamentally unfair and unconstitutional as applied in that it abrogates the physician-patient privilege" which was formed as a result of the mandated treatment under § 589.040.2. However, this constitutional challenge has not been properly preserved for our review because it was never raised in the trial court. *In Interest of J—Y—*, 637 S.W.2d 670, 673 (Mo. banc 1982).

gests, that blood kinship is not sufficient. In common usage, the word "family" is frequently employed to connote immediate blood relatives. *See* Webster's New Collegiate Dictionary at 414 (1975). Specific inclusion of "incest" in the category of conduct constituting abuse for purposes of § 211.447.2(2)(c), plainly suggests that the legislature was familiar with and contemplated a connotation of blood kinship as included within the term "family." Under § 568.020.1(3) RSMo 1986, a person commits the crime of incest if he engages in sexual intercourse or deviate sexual intercourse with, *inter alia*, a person he knows to be, without regard to legitimacy, his sister of the whole or half-blood. Thus, Father's acts of incest involving his minor sisters fall squarely within the plain language of § 211.447.2(2)(c) because they are acts of sexual abuse toward children who are his blood relations and therefore members of his "family."

Such interpretation of § 211.447.2(2)(c) is also fully consonant with its overall structure and purpose. As the court recognized in *A.M.B.*, the grounds for termination set forth in § 211.447.2(2)(c) focus on specified prior conduct which is indicative of a *propensity* to abuse children and thus subjects the parent to forfeiture of parental rights to other children, regardless of whether such children have previously been specific targets of abuse. *See, A.M.B.*, 738 S.W.2d at 130; *see also D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985).

The inference of such propensity is particularly strong in cases of incest because the parent by his actions has demonstrated that the natural, moral constraint of blood relationship has failed to prevent deviant conduct and thus cannot be relied upon to constrain similar conduct in the future. It is not sensible to assume that the legislature sought to limit such an inference to instances of sexual abuse toward the parent's offspring or children residing in the subject child's household. Rather, by its use of the broad term "family" and its express reference to "incest," it is clear that the legislature intended the grounds specified in § 211.447.2(2)(c) to encompass sexual abuse of the parent's minor siblings. Inasmuch as the fact that such abuse occurred in this case is undisputed, we find that there was clear, cogent and convincing evidence to support termination pursuant to § 211.447.2(2)(c). Because proof of any one of the statutory grounds is sufficient for termination, we need not address Father's challenges to the court's findings of additional grounds for termination pursuant to § 211.447.2(3).

■■■ In his final point, Father urges that the trial court erred in terminating his parental rights in consideration of the factors enumerated in § 211.447.3. The trial court has discretion to make findings on the factors specified in § 211.447.3 it deems applicable to the given case. *In Interest of M.H.*, 859 S.W.2d 888, 897 (Mo.App.1993). We will disturb its findings only for an abuse of such discretion. *Id.* To the extent that Father is attempting to have us re-weigh the factors found by the trial court, we decline to do so. We have reviewed the record and find that the findings of the trial court, particularly its findings pursuant to § 211.447.3(1) and (4),[4] are supported by substantial evidence and fully support the trial court's decision. Father conceded the absence of any emotional bonding with the child and both psychologists testified, without contradiction, to the absence of any services within their knowledge which would aid Father in becoming less of a sexual abuse risk to the child within an as-

---

4. **211.447.3.** When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2) or (3) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

\* \* \* \* \* \*

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

\* \* \* \* \* \*

certainable period of time. These factors alone are sufficient to support termination.

Judgment affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.