913 S.W.2d 376 (1996)
In the Interest of J.N.C., M.J.C., D.E.S. and K.C.S.
JUVENILE OFFICER, Respondent,
v.
T.E.T., Natural Father, J.T., Natural Mother, Appellants.
Nos. WD 50880, WD 50900.
Missouri Court of Appeals, Western District.
January 16, 1996.
*377 Danieal H. Miller, Bogdan S. Susan, Columbia, for Appellant Natural Father.
Helen M. Cripps, Cripps & Wright, Columbia, for Appellant Natural Mother.
Elizabeth K. Magee, Family Court Services, Columbia, for Respondent Juvenile Officer.
Before ELLIS, P.J., and ULRICH and LAURA DENVIR STITH, JJ.
ULRICH, Judge.
The parental rights of J.C.T. (Mother) to four of her children and the parental rights of T.E.T. (Father) to two of the four children were terminated after a two-day hearing. Both Mother and Father appeal separately. Mother claims the trial court erred in terminating her parental rights in that there was no substantial evidence to support the decision because the juvenile officer failed to prove by clear, cogent and convincing evidence that statutory grounds for termination exist. Both Mother and Father assert that termination was not in the best interest of the children.
Judgment affirmed.
This case involves four minor children born to Mother; J.N.C., born January 2, 1988; M.J.C., born August 3, 1989; D.E.S., born September 25, 1990; and K.C.S., born July 30, 1992. The natural father of J.N.C. and M.J.C. voluntarily relinquished his parental rights. Father is the natural father of *378 D.E.S. and K.C.S. and is the appellant in this case.
The three oldest children were brought to the attention of DFS after the children were taken to a hospital at the direction of an employee at the WIC office[1]. The emergency room notified police, and an investigation was initiated due to an untreated burn on J.N.C., bruises on M.J.C. and fingertip-shape bruises on the side of D.E.S.
The children were found to be within the jurisdiction of the Court pursuant to section 211.031.1(1) on March 4, 1991. In an adjudication hearing the children were found to have been physically abused by Father, and the court ordered that Father have no contact with J.N.C., M.J.C. and D.E.S. On October 23, 1991 the Court entered its order of disposition that the children remain in the custody of DFS for placement in foster care. Mother entered into a written service agreement with DFS that specified what was required for the family to be reunited.
K.C.S. was born in July, 1992. When K.C.S. was born, DFS was contacted by the hospital because of a concern for the child's safety. The mother refused to explain why her other children were in foster care, admitted to using marijuana during pregnancy, and the father was "hanging around" the hospital. Protective custody was not then ordered.
On November 18, 1992, J.N.C., M.J.C. and D.E.S. were placed with Mother on trial home placement. During this time J.N.C. reported to the social worker that Father was in the home and that he was administering spankings to the children. Father's presence in the home violated a no contact order issued against Father at the time of the adjudication hearing. The social worker also noticed bruises on M.J.C.'s forehead. The home placement was terminated in January, 1993.
At approximately the same time home placement for the other children was terminated, K.C.S. was also found to be within the jurisdiction of the Court, and on September 24, 1993, the Court ordered custody of K.C.S. with DFS for placement in foster care. K.C.S. had been placed into protective custody after Mother contacted DFS that Father had K.C.S. and would not return her. Father then had no money, transportation, home or even enough food to last an evening. Mother sought DFS intervention even after being warned that it might lead to protective custody of the child.
The case manager (first case manager) who had been handling the case from the time it was opened until September of 1993, recommended the termination of parental rights for J.N.C., M.J.C. and D.E.S. The case manager (second case manager) from September, 1993 to June of 1994 recommended termination of parental rights as to K.C.S. Both testified that the parents had failed to perform under the service agreement.
After two days of hearing, the trial court concluded that the children had been abused and that the conditions which led to the assumption of jurisdiction more than a year earlier still persisted and that little likelihood existed that the conditions will be remedied at an early date so as to return the children in the near future. The court then entered its order terminating Mother's and Father's parental rights after determining that such order was in the children's best interest.

MOTHER'S APPEAL
I. The Trial Court's Decision is Supported by Substantial Evidence and Is Not Contrary to the Weight of the Evidence.
The mother's first point on appeal claims that the trial court erred in terminating her parental rights because there is no substantial evidence to support the decision, and the decision is contrary to the weight of the evidence in that the juvenile officer failed to prove by clear, cogent and convincing evidence that any of the statutory grounds for termination exists.
The court may terminate parental rights where termination is in the best interest of the child and the trial court finds one or more of the statutory grounds set forth in *379 section 211.447 RSMo (1994) by clear, cogent and convincing evidence. In Interest of L., 888 S.W.2d 337, 339 (Mo.App.1994). Two statutory grounds formed the basis for the petition for termination:
(2) The child has been adjudicated to have been abused or neglected ...
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home....
§ 211.447.2, RSMo (1994).
Each of the above paragraphs include factors for trial court consideration. Each factor negatively impacts on the child and, if found, supports termination. In Interest of C.K.G., 827 S.W.2d 760, 765 (Mo.App.1992). The factors are not independent grounds for termination, but merely categories of evidence to be considered together with all other relevant evidence. In Interest of T_ M. E_, 874 S.W.2d 552 (Mo.App.1994). The trial court made extensive findings on these factors relating to both parents and the children.
The trial court's order will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc.1976); In Interest of C.K.G., 827 S.W.2d at 765. The facts and all reasonable inferences therefrom in the light most favorable to the trial court's order are considered. In Interest of B.L.B., 834 S.W.2d 795, 799 (Mo.App.1992). Extreme caution is exercised when considering setting aside a judgment on grounds that it is against the weight of the evidence. In Interest of W.S.M., 845 S.W.2d 147, 150 (Mo.App. 1993). This court will reverse only when left with a firm belief the judgment is wrong. In Interest of B.C.H., 718 S.W.2d 158, 160 (Mo. App.1986).
Although evidence was produced that demonstrated improvement in the lives of both parents,[2] substantial evidence existed to support the trial court's decision to terminate the mother's parental rights in that the conditions which led to assumption of jurisdiction still exist. The presence of evidence in the record that might support another conclusion does not necessarily establish the trial court's decision is against the weight of the evidence. R.L.P. v. R.M.W., 775 S.W.2d 167, 170 (Mo.App.1989). Due regard must be given to the trial court's opportunity to judge credibility of the witnesses. In Interest of B.L.B., 834 S.W.2d 795, 799 (Mo.App. 1992).
The children have been under the jurisdiction of the court for more than a year, and the evidence establishes that termination under 211.447.2(3) is appropriate. Mother has failed to comply with the terms of the service plan agreement. She admits to not maintaining stable housing or employment. These requirements were articulated in 1991 as a prerequisite to regaining custody of her children. She attended numerous therapy sessions, but she was not consistent in her appointments. Several therapists who worked with mother testified that she saw therapy as something she had to do for DFS purposes instead of a way to resolve her problems to properly provide for her children. Ms. Benner testified Mother was resistant to treatment and continued to minimize the abuse that her children had experienced even after they were taken from her the second time after trial home placement.
Additionally, Mother continued to allow Father to associate with the children during the trial home placement in violation of the court's no-contact order. Mother's lack of protection for the children continues. The first case manager testified that she became concerned because of Mother's determination to maintain her relationship with Father even at the risk of not reuniting with *380 her children. She stated the conditions that existed in 1991 continued through 1993, when she ceased working on the case. Prescribing the future compels consideration of the past. In the Interest of M.L.W., 788 S.W.2d 759, 762 (Mo.App.1990). Weighing whether parental rights will terminate necessitates evaluation of past parental conduct. As early as 1991, Mother knew what she must do in order to reunite with her children. As of 1993, shortly before the petition for termination was filed, the parents' conduct and the children's environment remained unchanged. The parents focus on their conduct subsequent to the filing of the petition. Their conduct after the petition to terminate their parental rights was filed cannot constitute the sole consideration of the court's decision. Otherwise, parents could claim reformation occurred when the petition was filed. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985). The interest of the children does not support such a restrictive rule.
Although mother provided gifts to the children, she failed to pay the $12.00 per month child support ordered by the court. A parent who lacks the ability to fully support her child but has the ability to make minimum contribution has a duty to do so. In Interest of S.J.G., 871 S.W.2d 638, 642 (Mo.App.1994). Contribution, no matter how minimal, demonstrates a parent's intent to continue the parent-child relationship. In Interest of M.L.K., 804 S.W.2d 398, 403 (Mo. App.1991). Mother was intermittently employed throughout the years the children were in foster care. No disability prevents her employment. Her lack of contribution evinces a lack of commitment to her children and her reunification with them.
DFS's involvement with this family since 1991 has been substantial. The agency exhausted its options in trying to adjust circumstances to permit the children to be returned to a proper home with their parents. Both case managers who participated in the present case for all but the last two months, agreed that no additional services were available by which the parents could benefit that have not already been offered.
The trial court did not err in finding one or more of the statutory grounds existed for termination. Substantial evidence supports the court's conclusion, it was not against the weight of the evidence, and the court neither erroneously declared nor applied the law. Murphy, 536 S.W.2d at 32.
II. Termination of the Mother's Rights Was In the Best Interest of the Children.
Mother's second point asserts that even if statutory grounds existed for termination of her parental rights the trial court erred in concluding that termination of her parental rights was in the best interest of the children. In a proceeding to terminate parental rights, the primary concern is the best interest of the child. In Interest of C.K.G., 827 S.W.2d at 766. Determining that termination is in the best interest of the child is within the discretion of the trial court. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc.1985). The finding of the trial court will be disturbed on appeal only if the trial court has abused its discretion. In Interest of L., 888 S.W.2d 337, 341 (Mo.App.1994).
Determination that termination of parental rights is in the best interest of the child does not require proof by clear, cogent and convincing evidence. In Interest of J.D.B., 813 S.W.2d 341, 344 (Mo.App.1991). What constitutes the best interest of the child is determined utilizing the evidence adduced. R.L.P. v. R.M.W., 775 S.W.2d 167, 171 (Mo.App.1989). Factors found by the trial court will not be reweighed by appellate review. Id.
The trial court has discretion to make findings regarding the factors specified in section 211.477.3. Id. The court made specific findings on five of seven factors listed in 211.447.3 RSMo (1994) supporting termination.[3] These identified factors along with *381 other circumstances affecting the children support the trial court's finding that termination of parental rights was in the best interest of the children.
In this case all of the children were removed from the home at a very young age; J.N.C. was 3 years old, M.J.C. 18 months old, D.E.S. 5 months old, and K.C.S. 6 months old. They have spent most of their lives in foster care. The two younger children have limited or no emotional bonding with their mother. The two older children, especially J.N.C., do have ties with their mother. However, these children have not manifested any problems when separating from their mother after visits and they have not inquired about their mother when not visiting with her.
Several factors listed in the statute that must be considered when determining whether to terminate parental rights are present. The court determined that, based on the testimony of the two primary case managers, no additional services of DFS can be offered to encourage reunification of the family that had not already been attempted. Mother has not paid any support for the children although financially able to do so. She has also failed to fulfill the terms of the service agreement as required to regain custody of her children. Her failure evinces a disinterest or lack of commitment to the children. Sufficient evidence supports the trial court's finding that termination of Mother's parental rights was in the best interest of the children.
Point II is denied.

FATHER'S APPEAL
Father's sole point on appeal propounds that the trial court's decision to terminate his parental rights was error because termination was not in the best interest of the children and was against the weight of the evidence.[4] The above discussion regarding termination of parental rights applies no less to Father. His abuse of the children led to the original action by DFS. He, too, has failed to abide by the provisions imposed for reunification to occur. Father has not paid any support towards the children's care even though he was capable. His two children, K.C.S. and D.E.S., have no emotional ties to him. Finally, evidence reflects that no additional services would improve the situation and foster reunification. The presence of only two of these factors is sufficient to support the finding that termination of parental rights is in the best interest of the children. In Interest of L., 888 S.W.2d 337 (Mo.App. 1994).
Father relies on evidence he presented that he has reformed through medication and therapy. However, deference is given to the trial court's superior opportunity to judge credibility of witnesses. In Interest of T_ M. E_, 874 S.W.2d 552, 559 (Mo.App.1994). The presence in the record of evidence that might support another conclusion does not necessarily establish that the trial court's decision is against the weight of the evidence. R.L.P. v. R.M.W., 775 S.W.2d at 170. The trial court's decision that D.E.S. and K.C.S.'s best interest requires termination of Father's parental rights did not abuse the trial court's discretion. Father's point on appeal is denied.
The judgment of the trial court is affirmed.
All concur.
NOTES
[1] No explanation is provided in the briefs or the record as to what services WIC provided.
[2] Father had been medicated for his mental illness.
[3] Section 211.447.3 instructs the court to evaluate the following factors when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subject the child to a substantial risk of physical or mental harm.
[4] Father does not appeal the finding that one of the statutory grounds enunciated by section 211.447 RSMo (1994) exists.