In the Interest of A.S. and N.J.S., Minors.

L.M., Appellant,

v.

Barton County Juvenile Office, Respondent.

No. 23563.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 28, 2001.

Kevin GOWENS, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 78024.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 2001.

Douglas R. Hoff, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Stephanie Morrell, Jefferson City, MO, for respondent.

Before GARY M. GAERTNER, Sr., P.J., CRAHAN, J., and DRAPER, J.

### ORDER

James V. Nichols, Nichols & Nichols, Lamar, for Appellant.

Gary Ratzlaff, Lamar, for Respondent.

Belinda S. Elliston, Kaderly & Kaderly, for Guardian Ad Litem.

BARNEY, Chief Judge.

L.M. ("Mother") appeals from a judgment of the Circuit Court of Barton County, Juvenile Division, ("juvenile court") terminating her parental rights to A.S., a male child born September 26, 1991, and N.J.S., a female child, born September 21, 1989. The juvenile court also terminated the parental rights of K.S., father of the two minors ("Father"). He does not appeal.

The juvenile court based its judgment on two grounds for termination: section 211.447.4(2), abuse and neglect; and section 211.447.4(3), failure to rectify or to remedy.[1]

Mother raises three points of juvenile court error. She first complains that the juvenile court's apparent finding that Mother engaged in "severe act[s] or recurrent acts of physical and emotional abuse toward the children" was against the weight of the evidence. In her second point, Mother maintains that the juvenile

---

1. Statutory references are to RSMo Cum. Supp.1999, unless otherwise stated.

court's finding that the children had been under its jurisdiction for a period of over one year and the conditions which led to the assumption of jurisdiction still persisted was against the weight of the evidence. In her third and final point, Mother asseverates that the juvenile court's decision that terminated her parental rights was in the best interest of the children was also contrary to the weight of the evidence.

■■■ "On review, we will affirm the juvenile court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re S.L.N.*, 8 S.W.3d 916, 920 (Mo.App. 2000). In reviewing the juvenile court's decision, "an appellate court views the evidence and its reasonable inferences in a light most favorable to the decision." *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App.2000)(quoting *In re A.H.*, 9 S.W.3d 56, 59 (Mo.App.2000)). An appellate court also defers to a juvenile court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *Id.* "[E]vidence in the record that might support another conclusion does not necessarily establish that the trial court's decision is against the weight of the evidence." *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 170 (Mo.App.1989).

The genesis of this case was a child abuse hot line call regarding A.S. and N.J.S. and received by the Barton County DFS on April 2, 1997. At that time, the children were in the physical custody of Father, living with him and their stepmother in Golden City, Missouri.[2] Mother was then living with her boyfriend's parents in Mindenmines, Missouri. After an investigation, DFS determined that the children had been subjected to physical abuse by Father and stepmother, and the children were removed from Father and stepmother's household and taken into the care and custody of DFS. The children were then placed in the foster care of their paternal grandmother, ("V.S.U."), who resided in Mindenmines, Missouri. At the time of their removal from Father's physical custody, Mother agreed to the children's physical placement with V.S.U.

*Point I.*

■■■ Mother's first point on appeal relates solely to the juvenile court's apparent finding, pursuant to section 211.447.4(2) that she had a role in the physical abuse of the children. She solely contends that "there was no evidence that Mother had ever abused or permitted abuse of the children...." Respondent County Juvenile Office ("Respondent"), virtually concedes this point *as written* by Mother.

However, in reviewing the juvenile court's findings pursuant to section 211.447.4(2)(a)–(d), discussed *infra*, we find that the juvenile court also found Mother inadequate under (d), which relates to a parent['s] failure to provide a child with "adequate food, clothing, shelter or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development." This finding was not challenged by Mother in her first point.

Under section 211.447.4(2), one of the possible grounds for termination is if a child has been "abused or neglected." In making this determination, the juvenile court is required to "consider and make findings" on four "conditions or acts of the parent":

> (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent

---

2. The evidence was that the parties' dissolution of marriage decree awarded the physical custody of the two minors to Mother, but she had voluntarily relinquished physical custody of the children to Father. Although Mother testified that Father's physical custody was a "temporary agreement," she did acknowledge that the children had been residing with Father for an "extended period of time."

unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development. . . .

§ 211.447.4(2)(a–d).

While the primary concern in any termination case is the best interests of the child, the juvenile court may reach the issue of the best interests of the child only after it has made a determination that one or more of the statutory grounds for termination exists. *In re S.L.N.*, 8 S.W.3d at 920. A juvenile court may terminate parental rights when the termination is in the best interest of the child and it appears by clear, cogent, and convincing evidence that *one* or more of the grounds for termination under section 211.447 exists. *In re C.M.D.*, 18 S.W.3d 556, 560 (Mo.App.2000). "Clear, cogent and convincing evidence in an action for the termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re N.M.J.*, 24 S.W.3d at 777. However, "[t]his test may be met despite the presence of contrary evidence before the court." *Id.* We are mindful that due regard is given the opportunity of the juvenile court to judge the credibility of the witnesses. *In Interest of D——L——C——*, 834 S.W.2d 760, 761 (Mo.App.1992).

Here, the juvenile court made the required findings as to all four of the required "conditions or acts of the parent" under section 211.447.4(2). It found no evidence existed that either parent had a statutorily existing mental condition—§ 211.447.4(2)(a)—or that either parent had a statutorily existing chemical dependency—§ 211.447.4(2)(b). As to section 211.447.4(2)(c), the juvenile court also found that the parents "continuously failed to provide [the minors] with any financial support, while able to do so, and therefore they have denied providing them with necessary care and support." Regarding section 211.447.4(2)(d), it found that:

[a] severe act or recurrent acts of physical and emotional abuse toward the children was [sic] committed against the children while in the home by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any other child in the family. . . .

As previously set out, Mother complains that she never "abused or permitted abuse of the children." We also fail to find any evidence supporting the complained of finding. Nevertheless, because of this Court's paramount interest in the welfare of the children in this case, we do not ignore the juvenile court's findings pursuant to section 211.447.4(2)(d), *supra*, and will discuss them in conjunction with our review of Mother's second and third point. Accordingly, we hold in abeyance our final determination as to Point I. We are mindful that in a termination of parental rights proceeding, *one* of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination. *In re N.M.J.*, 24 S.W.3d at 777.

*Point II.*

In her second point, Mother contends the juvenile court erred in finding that the children had been under the jurisdiction of the court in excess of a year and that the conditions which led to jurisdiction still persisted, because she was making reasonable efforts to make herself ready, willing and able to provide a permanent home for the children.

Section 211.447.4(3) provides that it is a ground for termination of parental rights if:

[t]he child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home....

§ 211.447.4(3). Under § 211.447.4(3), the juvenile court is also required to "consider and make findings" on four factors, to-wit:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control....

§ 211.447.4(3)(a–d). In its judgment, the juvenile court found as to section 211.447.4(3)(a–b), that:

a. [Father] and [Mother] have repeatedly failed to comply with [DFS] to draw up social service plans to work toward reunification.

b. The efforts of [DFS] and [Respondent] have not met with any success in aiding [Father] or [Mother] to adjust their circumstances or conduct to provide a proper home for the child[ren].

As to section 211.447.4(3)(c–d) and as noted above, the juvenile court found, in conjunction with its findings under section 211.447.4(2), that neither parent suffered from a mental condition which would preclude either one from knowingly providing the minor children with the necessary care, custody and control; or from a chemical dependency.[3]

In our review of the facts supporting the juvenile court's findings pursuant to section 211.447.4(3)(a–b), the record clearly supports the juvenile court's findings that Mother did not take advantage of the services offered by DFS. Amanda Whitley, the DFS social services worker assigned to the case, testified that

---

3. While the better practice would be for the juvenile court to make separate findings concerning mental condition and chemical dependency under *both* § 211.447.4(2) and § 211.447.4(3), we are satisfied from a review of the record that the juvenile court "consider[ed] and ma[de] findings" on all four factors specified in subdivisions (a) through (d) of subsection (3) of section 211.447.4. *See In re N.M.J.,* 24 S.W.3d at 778. These four factors are not separate grounds for termination in and of themselves, but rather are categories of evidence to be considered together with all other relevant evidence. *In Interest of J.M.,* 815 S.W.2d 97, 102 (Mo.App.1991).

she immediately commenced to "work towards reunification with the family," and to that end set up a series of meetings to create a social service agreement for the purpose of reunifying the children into Mother's home. After several meetings were canceled by DFS, Mother was invited to attend a further meeting to discuss permanency planning for her children. She never appeared for this meeting nor any other subsequent planning meetings of which she was notified. Mother never followed through or complied with this DFS request, nor was she receptive to DFS's offer to help her find housing.[4] Ms. Whitley also acknowledged that she had had "a lot of difficulty" with both parents "taking what was offered in services" and acknowledged that both parents "routinely denied the services that [DFS] thought were appropriate in order to reintegrate [the] children[.]" She testified that she did not believe that any additional services could have been offered that would have brought about a lasting change that would allow the children the permanency of reintegration into their home with either parent. "Although the effort of DFS to reunify the parent and child is factor to be considered, 'even the absence of treatment or services is no defense to a termination proceeding.'" *In Interest of J.M.*, 815 S.W.2d at 102 (quoting *In re Interest of A.L.B.*, 743 S.W.2d 875, 881 (Mo.App.1987)).

■ We also observe that there is an "affirmative duty on the part of the parent to support, communicate and visit the child and to show that the parent is committed to the child by showing an interest." *Id.*

at 103. Although not clear in the record, apparently at some time in 1998 Mother requested custody of the children. Since she was living with her boyfriend at that time DFS denied her request due to inappropriate housing. Prior to that time a visitation schedule was created which allowed Mother weekly visitation with her children at the DFS office. During these visits Mother periodically brought toys for the children. The evidence shows, however, that Mother's visitation at the DFS office was largely sporadic. Furthermore, Mother did not provide DFS or V.S.U. with financial support for the children at any time, despite the fact that Mother testified that she had been employed at various nursing home facilities for at least two years prior to the termination hearing.

> DFS was under no duty to request that [Mother] contribute to the support of her children while they were in the custody of DFS because a "demand was not required to impose upon [Mother] a duty for some responsibility for the support of her children. The fact that support was supplied from another source does not obliterate that duty."

*R.L.P.*, 775 S.W.2d at 171(quoting *In Interest of M.B.A.*, 709 S.W.2d 941, 947 (Mo. App.1986)).

■ The record also reveals that Mother also made sporadic visits with the children at the home of V.S.U., and sometimes removed the children from the paternal grandparents' home. In November of 1998, there was a physical altercation between Mother and V.S.U.'s husband. Apparently, V.S.U.'s husband woke from a

4. Ms. Whitley acknowledged that she would periodically send each parent a "CS–1 report," which is generated as a result of a "PPR [permanency planning review] meeting" and that these reports consisted of a "detailed document that covers a wide range of information about the children" and that "if [the parents] would read—had read those, those would outline what was expected in order for there to be change for these children[.]" Ms. Whitley also acknowledged that if "either one of these parents had wanted to

reengage [DFS] at some time, they could have done that easily...."

Ms. Whitley also testified that DFS made a referral for counseling services for Mother and the two children to "deal with the abuse and neglect, some of the feelings they were having about that." Mother attended one or two sessions. Mother acknowledged that she merely took the children to these sessions but did not participate in them; she testified that she "waited in the waiting room." She quit her attendance after two or three sessions.

sleep and began yelling at Mother and struck her. Mother hit back. He then chased her out of the house. Thereafter, DFS did not permit Mother to have visitation at the home of the foster parent. Although disputed by Mother, according to Ms. Whitley, after the physical altercation at the foster parent's home in November 1998 until December 1999, Mother made no request to DFS for visitation with the children. It is "appropriate for a trial court to consider the length of time a child is out of a parent's custody and the limited contact during that time." *S.L.N.*, 8 S.W.3d at 924. Here the record shows that Mother acknowledged that between November 1998 and September 1999, she had no visitation with the children, save for time spent with them during a few ballgames. While Mother may have provided gifts for her children during each of their birthdays in September 1999 and may have observed a few of their ballgames, the juvenile court could have "reasonably deem[ed] these actions superficial gestures." *In Interest of F.N.M.*, 951 S.W.2d 702, 706 (Mo.App.1997).

In July of 1999, Mother moved out of the state to Iola, Kansas, to "get away from Mindenmines, from my boyfriend that I was seeing." However, Mother also acknowledged that she had not notified DFS of her move nor forwarded DFS her new address. Furthermore, Mother acknowledged that between the time custody of the children was placed with DFS and the time of the parental termination proceedings, she had not sought legal assistance in an attempt to have the children returned to her custody. Indeed, Ms. Whitley testified that during the calendar year 1999, Mother displayed an attitude of "disinterest" regarding the children.

 Mother also testified that she had written six letters to her children, although, admittedly, they were written only after the petition for termination of her parental rights had been filed. At trial she stated that she was prepared to do what it took to regain custody of her children. We observe, however, that " '[a] short term improvement in circumstances which occurs after the filing of the petition for termination is less apt to be persuasive.' " *S.L.N.*, 8 S.W.3d at 927 (quoting *In the Interest of S.H.*, 915 S.W.2d 399, 404 (Mo.App.1996)). Indeed, "[a] parent's conduct after the filing of the termination petition cannot constitute the sole consideration of the trial court's decision." *N.M.J.*, 24 S.W.3d at 780. " 'The court must look to the totality of a parent's conduct, both prior to and after the filing of the petition, 'otherwise, a parent may argue that he or she has reformed since the filing of the petition; reformation having occurred while the child was away.' " *Id.* (quoting *In re J.W.*, 11 S.W.3d 699, 706 (Mo.App.1999)). " 'All grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct.' " *Id.* (quoting *In re T.T.*, 954 S.W.2d 429, 432 (Mo.App.1997)).

We are convinced that the above evidence serves as "[c]lear, cogent, and convincing evidence" that a ground existed to terminate Mother's parental rights under section 211.447.4(3). *See In re N.M.J.*, 24 S.W.3d at 777. Additionally, the required findings of the juvenile court pursuant to section 211.447.6, discussed *infra*, supports the juvenile court's conclusion to terminate the parental rights of Mother. In summary, the children had been in the custody of the juvenile court for more than one year. While the children were no longer being physically abused, conditions of a potentially harmful nature continued to exist, and were likely not going to be remedied in the near future because Mother made little effort to comply with the requirements of DFS, as its personnel sought to reunite Mother with her children. Furthermore, the evidence supports the proposition that there was little likelihood that Mother would cooperate with DFS to alleviate those conditions in the near future. § 211.447.4(3). Lastly, as the DFS social worker testified, the continuation of the parent-child relationship would greatly diminish the children's "prospects

for early integration into a stable and permanent home." *Id.* Point Two is denied.

Additionally, we conclude that the evidence as laid out, *supra*, together with the juvenile court's findings, supports the juvenile court's determination pursuant to section 211.447.4(2)(abuse *or* neglect). *See R.L.P.*, 775 S.W.2d at 170–72; *see also In Interest of D——L——C——*, 834 S.W.2d at 765. Accordingly, Mother's Point One is denied as to any error arising from the juvenile court's finding that the children were "neglected," as statutorily set out in section 211.447.4(2).

Having determined that sufficient grounds exist for the termination of Mother's parental rights as to the children, we must still consider whether termination was in the children's best interest under section 211.447.5,[5] which brings us to Mother's third and final point.

### Point III.

■■■ In her third point, Mother argues that termination was not in the best interest of the children in that the children "had strong emotional ties to Mother, [and] that Mother had, to the extent reasonably possible, maintained contact with the children and had provided support to the extent Mother was able to do so."

■■■ The juvenile court must find that termination is in the best interest of the child. *In re C.M.D.*, 18 S.W.3d at 560. Unlike a finding that a proper *ground* exists for termination, a finding that termination is in the best interests of the child does not require proof by clear, cogent, and convincing evidence. *In Interest of J.N.C.*, 913 S.W.2d 376, 380 (Mo.App.1996); *In Interest of J.D.B.*, 813 S.W.2d 341, 344 (Mo.App.1991); *see* § 211.447.5. A determination that termination of parental rights is in the best interests of the children is within the discretion of the juvenile court, and will be disturbed on appeal only

if the juvenile court abused its discretion. *In Interest of J.N.C.*, 913 S.W.2d at 380. Judicial discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *James v. James*, 853 S.W.2d 425, 430 (Mo.App.1993).

A juvenile court's determination as to best interests under section 211.447.5 is aided by the findings required under section 211.447.6(1)–(7):

6. When considering whether to terminate the parent-child relationship pursuant to subsection 2 or 3 of this section or subdivision (1), (2), (3) or (4) of subsection 4 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

---

5. Section 211.447.5 reads, as follows:
 5. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if the court finds that the termination is in the best

interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of this section.

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

§ 211.447.6(1)–(7). " 'The statute leaves it to the trial court's discretion to make findings on the factors it deems applicable to [this] case.' " *S.L.N.*, 8 S.W.3d at 926(quoting *In the Interest of M.H.*, 859 S.W.2d 888, 897 (Mo.App.1993)). The juvenile court made findings as to the first five factors, to-wit:

(1) The above named children demonstrate fear at the prospect of being returned to either biological parent.[6]

(2) There has been no regular visitation between the parents and the children since their placement in foster care.

(3) The parents have made no payment for the cost of maintenance of the children when financially able to do so.

(4) It is believed that there are no additional services, which would be likely to bring about a lasting parental adjustment enabling a return of the child[ren] to the parents within an ascertainable period of time.

(5) The above-described behaviors of the parents show a disinterest in or lack of commitment to the child[ren].[7]

We find that juvenile court's findings are supported by the evidence presented. Ms. Whitley acknowledged that during those occasions in which she observed Mother visiting with her children that the "parental-type bonding" between Mother and the children "wasn't very strong at all." Ms. Whitley also related that during the calendar year 1999, she regularly monitored the children and that on occasion one of the children would inquire of Mother. However, she noted that she never received a request from either child to "see [Mother]." As noted above Mother's visitation was sporadic and contributed little to their financial support, save for an occasional purchase of a toy. The evidence showed that the services offered by the DFS were ineffective mainly due to Mother's resistance to them and her wavering interest in the children, which seemed to increase only following the initiation of termination proceedings. Therefore, we find that the juvenile court's finding that termination was in the children's best interest was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *James*, 853 S.W.2d at 430. Mother's third and final point is denied. *J.N.C.*, 913 S.W.2d at 381.

The judgment is affirmed.

PREWITT, J., concurs.

GARRISON, J., concurs.

---

6. The juvenile court is incorrect as to this particular finding. However, our review of the record convinces us that the children exhibit few signs of having bonded with Mother and now exhibit but modest emotional ties with Mother.

7. We find no abuse of discretion in the juvenile court's not evaluating or making a finding regarding subdivisions (6) and (7), because they were largely irrelevant to the juvenile court's determination based on failure to rectify or remedy. *See* § 211.447.4(3).